COMMERCIAL FINANCE COMPANY, a Corporation, *Appellant,* v. BROOKSVILLE HOTEL COMPANY, a Corporation, *Appellee.*

Division A.

Opinion filed September 17, 1929.

*Geo. C. Martin* and *H. L. Anderson,* for Appellant;

*J. C. Davant,* for Appellee.

ELLIS, J.—The Brooksville Hotel Company, a corporation doing business in the City of Brooksville where it owned and operated a hotel, entered into an executory con-

tract of sale with the Refrigeration Sales Company under which the refrigeration company agreed to sell and the hotel company agreed to buy a refrigerator to be used by the purchaser at the "Tangerine Hotel until paid for." The price to be paid for the refrigerator cannot be determined from the terms of the contract. The bill alleges the sum to be $2183, all of which has been paid except the sum of $163.

The contract provided that the refrigerator was to be delivered by the seller to a common carrier at Jacksonville; that the title to it should remain in the seller until the "purchase indebtedness is fully paid in cash." It provided that in certain contingencies, among which were the removal of the refrigerator from the place designated for its use or the failure to pay any of the installments to become due under the contract, the seller should have the option forthwith of repossessing the "said goods and chattels" retaining as rent, depreciation and for liquidated damages, any payments theretofore made.

The contract was assigned to the Commercial Finance Company, a corporation to whom the hotel company paid installments until there was left an unpaid balance of $163. It then sued out a writ of replevin to obtain possession of the refrigerator. A writ came to the hands of the sheriff of Hernando county and the hotel company commenced its suit against the finance company and the sheriff to restrain the former by injunction from further prosecuting its action of replevin and the sheriff from taking possession of the refrigerator under the writ.

The proposition upon which the bill rests is that upon the installation of the refrigerator, which was a "Twitty Portable Cork & Cement Refrigerator" with "three freezing compartments and all necessary pipe and fittings," it became fixed to the freehold and lost its quality of personal property.

The bill alleges that the sellers installed the refrigerating plant and in doing so built the same into the hotel, erected the plant upon a concrete base and connected the necessary pipes thereto; that it cannot be removed "without destroying the walls of said building and tearing out certain portions thereof." The bill was sworn to by R. W. Heald, who is not described as complainant, attorney, agent or officer of the complainant.

A temporary injunction was granted without notice. A demurrer to the bill was overruled. The defendant answered and then moved to dissolve the injunction, which motion was denied and the defendant appealed from the order granting a temporary injunction and the order denying the motion for a dissolution of the same.

The bill was without equity. The refrigerator did not constitute part of the freehold. Its character as personal property was not lost by the installation of it in the building. The title was in the complainant who succeeded to the rights of the refrigeration company. The failure to pay the installments due gave to the plaintiff in replevin the right to repossess it.

The refrigerator was personal property when the contract was made between the parties; it was referred to in the contract as a chattel; in the transaction between the parties it was so regarded, as the contract in one of its clauses dealt with the possibility of its being removed from the building where it was to be used. The bill does not allege that the parties intended by the installation of the "plant" to make it a part of the freehold, nor that the seller waived his right to repossess it in the event of the failure of the purchaser to pay for it.

If the refrigerator did not become a fixture upon the land, did not lose its character as personal property, never passed into the ownership of the complainant, the bill made no

case for an injunction to restrain the recapture of the machine.

In the case of Seedhouse v. Broward, 34 Fla. 509, 16 So. R. 425, this Court said, speaking through Mr. Justice TAYLOR, that "In establishing the fact whether a given thing is or is not a fixture upon land, the intention of the *owner* in placing it there, to be gathered from his declarations, and from the character, relations and purposes of the property, is an important element, sometimes of controlling importance."

A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty by some one having an interest in the soil becomes part and parcel of it. An examination of the authorities upon the question of what is a fixture will reveal that the above definition, which is taken from the text in American and English Encyclopaedia of Law, is about as definite as can be found.

Judge Kent, in Strickland v. Parker, 54 Me. 263, said: "It is not to be disguised that there is an almost bewildering difference and uncertainty in the various authorities, English and American, on this subject of fixtures." Continuing he said: "One thing is quite clear in the midst of the darkness; and that is, that no general rule, applicable to all cases, and to all relations of the parties, can be extracted from the authorities."

Under the rule as it was applied in the early cases in England the complainant would have a better case, but even then it would be confronted by the objection that it, the owner of the freehold, was not the owner of the chattel when it was attached. According to Lord Chancellor Hardwicke, "in the old cases they go a great way upon the annexation to the freehold, and so long ago as Henry the Seventh's time the courts of law construed even a copper and

furnace to be part of the freehold." See 8 Am. and Eng. Ency. Law, p. 42, note.

The above authority declares that in order to ascertain whether or not a particular thing is a fixture it is necessary to apply the three rules which the courts have most generally in adjudicated cases agreed upon. They are as follows: First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected, and third, the intention of the party making the annexation that it shall be a permanent accession to the freehold. What that intention was in making the annexation is inferred from the following facts: a, the nature of the article annexed; b, the relation of the party making the annexation; c, the structure and mode of annexation, and d, the purpose or use for which the annexation has been made.

That the refrigerator was actually annexed and was appropriate to the purpose of the part of the realty with which it was connected is clearly enough stated or may be inferred from the allegations of the bill, but the intention of the parties in annexing it and their relation to the article and the freehold clearly appears from the exhibit to the bill to be contrary to any purpose of making the chattel a part of the realty.

The chattel was not owned by the owner of the freehold; the purpose of the owner of the chattel was that it should remain personal property until paid for; in this purpose the owner of the freehold participated. They both contemplated the possibility of its removal and made provision in the contract for such an event. They both agreed that the owner of the chattel might repossess it at any time the owner of the land should make default in the payments and that the title to the chattel should remain in the seller

until the thing was paid for, which is inconsistent with the idea that it should become a part of the land.

Many cases hold that the intention of the party making the annexation is the chief element to be considered. Hill v. Sewald, 53 Pa. St. 271; McDavid v. Wood, 5 Heisk (Tenn.) 95; Allen v. Mooney, 130 Mass. 155; Ottumwa Woolen Mill Co. v. Hawley, 44 Iowa 57; Hutchins v. Masterson, 46 Tex. 551; Hill v. Wentworth, 28 Vt. 428; Jones on Mortgages (4 Ed.) Sec. 429.

Articles of furniture are not fixtures though attached to the building. Shaw v. Lenke, 1 Daly (N. Y.) 487; McKeage v. Hanover Fire Ins. Co., 81 N. Y. 38, 37 Am. Rep. 471.

Electrical refrigerators are somewhat in the nature of machinery and yet have something of the quality of furniture. Although they are attached by wires and pipes to the building and may even be placed upon specially constructed bases or foundations they are usually regarded by the trade as chattels; they are sold often upon installments and the parties agree that the nature and character of the article as personalty shall not change nor the ownership of it pass until paid for. We think that in the case presented by the bill the chattel did not become a fixture; that there was no equity in the bill and that the injunction should not have been granted. The demurrer should have been sustained.

The orders appealed from are reversed.

Terrell, C. J., and Brown, J., concur.

Whitfield, P. J., and Strum and Buford, J. J., concur in the opinion and judgment.