STANDARD MOTORS FINANCE CO., INC., *v.* CENTRAL FARMERS TRUST COMPANY, *et al.*

157 So. 520.
Division A.
Opinion Filed November 13, 1934.

*Houser & Wood,* for Appellant;

No appearance for Appellees.

DAVIS, C. J.—The legal proposition to be decided in this case is one of priorities between the vendor of a sprinkler system under a retained title contract providing for the installation of such system in an office building and the mortgagee of a mortgage on such property. It is conceded that the mortgage was already a perfected lien on the building at the time the sprinkler system was so installed. But it is appellant's contention that by reason of the provisions of the installation contract, the title to such system never passed to the mortgagor and thus was never encumbered by the mortgage, or in other words, that the sprinkler system constituted and remained a removable fixture belonging to appellant which appellant is entitled to be awarded as against any rights asserted under the mortgage.

In addition to the foregoing circumstances, appellant also relies on the fact that the mortgagee's predecessor, the trustee under a mortgage bond issue, by its solemn agreement made for the benefit of the bondholders, actually induced

and brought about the installation of the sprinkler system in the mortgaged building at the time it was so installed, while at the same time the Palm Beach Guaranty Company, which was given the right under the trust deed, to manage the building in which the sprinkler system was installed, had knowledge of, acquiesced in and utilized such system for the building's protection.

It was the Chancellor's view, however, as pointedly expressed by him in his final decree, that appellant, as such vendor, should be denied any rights such as it claimed in and to the sprinkler system as against the rights of the mortgagee, because the vendor had so installed and built its sprinkler system into the mortgaged building itself that it had become a permanent and integral part of the mortgaged realty and not merely attached thereto as a removable fixture which could be dismantled and taken away without substantial and material injury to the structure in which it had been set up. The Chancellor also based his decree upon a finding that part of the sprinkler system had been paid for by the owners of the mortgaged property at the time same was installed, the balance being covered by the special agreement entered into between the building's owners and the conditional vendor, Standard Motors Finance Company, Inc., appellant herein, and that by reason of this fact it could not be determined and identified what part of the sprinkler system had been paid for in full and what part constituted the balance of the system claimed by Standard Motors Finance Company, Inc.

So the Chancellor entered a final decree of foreclosure against the claimant of the sprinkler system, holding that the lien of the trust deed upon the sprinkler system was and is prior to the claim of appellant as conditional vendor thereof. The present appeal is from such final decree.

In our recent case of Phillips Co. v. Wagner, 115 Fla. 631, 135 Sou. Rep. 842, we held that the fee simple owner of a building and the land upon which it stands may lawfully make a contract for the specific purpose of securing the benefits of a sprinkler system in the building on terms that will enable the installing conditional vendor of it to protect his collections of rentals and payments for its use, annd that such agreements were of a character capable of specific enforcement in a court of equity. It has been recognized in the United States Circuit Court of Appeals for this jurisdiction that if an installation in the nature of a fixture can be removed without substantial damage to a building that such an installation does not lose its character as personalty, where title thereof is retained in the installer under a conditional sales contract, even though the removal thereof would render it impractical to successfully operate the building, and the dismantling of the same would necessitate an unfixing of bolts and screws fastening same to the building itself. Wheat v. Otis Elevator Co., 23 Fed. (2nd) 152. See also Thompson v. Otis Elevator Co., 38 Fed. (2nd) 1020; Commercial Finance Co. v. Brooksville Hotel Co., 98 Fla. 410, 123 Sou. Rep. 814; Greenwald v. Graham, 100 Fla. 818, 130 Sou. Rep. 608; Standard Motors Finance Co. v. Weaver, 199 N. C. 178, 153, S. E. Rep. 861; Holt v. Henley, 232 P. S. 637, 34 Sup. Ct. Rep. 459, 58 L. Ed. 767; Detroit Steel Cooperage Co. v. Sistersville Brewing Co., 233 U. S. 712, 34 Sup. Ct. Rep. 753, 58 L. Ed. 1166.

In the present case the sprinkler system was described in the evidence as a construction of the following character: Large water line—determined by size of building, is brought in from main water supply to the building; as it enters the building there is a system of valves for shutting off the water in the various branches; from these valves there is run one or more branch lines throughout the building, which

branch lines generally have subsidiary lines running from them; at frequent intervals and in a manner designated by fire insurance companies, there are special outlets called "sprinkler heads" exposed; these sprinkler heads constitute the protective part of the system because they permit a spray of water to be released in their vicinity when excess heat from an incipient fire occurs in proximity to such sprinkler heads, thereby causing them to automatically open as they are designed to do in such event. The sprinkler system when installed may be either enclosed or exposed but is usually covered up with the exception of the sprinkler heads which from their very nature must be open and vulnerable.

The system in controversy in this case was installed as an enclosed system, the retaking possession of which would necessitate somewhat going between the walls and floors of the building in order to take out the pipes and remove the sprinkler heads. Such operation would necessarily require patching up the holes from which exposed parts were removed. The damage to the building in the operation of removal would consist principally of ripping up floor boards and tearing off some of the plaster, all of which is capable of replacement by means of comparatively simple repairs.

In Burbridge v. Therrell, 110 Fla. 6, 148 Sou. Rep. 204, recently decided by us, we had occasion to go into the subject of removable fixtures placed on mortgaged real estate and there stated that the rule on this subject admitted of the placing of fixtures on mortgaged real estate by an agreement with the mortgagor, but without that of the mortgagee, to the effect that same should remain personal property although more or less permanently affixed to the realty, provided the agreement or understanding with the mortgagor merely contemplated so attaching the fixture to the realty that it cannot conclusively be said as a matter of law that the fixtures must be regarded as a part of the

mortgaged realty, despite the specific understanding and agreement of the mortgagor to the contrary and that it should be removable. It was therein declared that where the mortgagor had contracted for removal of a fixture attached to the mortgaged real estate, although without the mortgagee's consent that it should remain personal property and be subject to later removal, that the agreement of the mortgagor if invoked prior to sale under foreclosure would be recognized and given effect so long as the fixture was not so attached to the mortgaged real estate as to impair the mortgagee's pre-existing security rights ·therein should the fixture be detached therefrom.

In the case now before us we approve the rule laid down by the Supreme Court of North Carolina in the case of Standard Motors Finance Co. v. Weaver* (153 S. E. Rep. 851), *supra,* where the court decided that one holding a mortgage on real estate had no paramount equitable claim to a sprinkler system annexed to mortgaged premises and stipulated to continue as personal property until paid for, where title thereto had been specifically retained by the seller under a contract ·made with the mortgagor so providing, and involved no more permanent form of installation for such sprinkler system than that disclosed by the record in this case concerning the particular system in controversy.

---

*In the North Carolina case referred to the sprinkler system was claimed as against the purchaser at a sale already held under the mortgage. Here the controversy is between the mortgagee and the conditional vendor prior to any such sale. It is within the power of the court in ordering a foreclosure sale of the mortgaged premises in a case like this to continue the rights of the conditional vendor as against the purchaser who may elect to pay for the system or have it removed from the property.

Reversed with directions to modify the final decree to conform to the holding of this opinoin.

ELLIS and TERRELL, J. J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.