KANNER, Judge.
The Illinois Grain Corporation is appealing from an order through which the court dismissed its amended complaint as supplemented on the basis that no cause had been stated upon which relief could be granted. The object of the suit was voidance of certain ad valorem tax assessments and the taxes which would be derived thereunder, imposed for the County of Hillsbor-ough and the City of Tampa.
The property involved in this controversy consists of a large grain elevator, together with certain machinery and fixtures, erected by the grain corporation upon lands which it subleases from River-Gulf Terminal, Inc., lessee in turn of these lands from the owner, Hillsborough County Port Authority. The prime lease from the Port Authority contained the provision that taxes be paid by the tenant, except for those assessed against the bare land and bulkhead. It also provided, however, the right of contest in proper legal proceedings against any tax which might be assessed. Taxes have been assessed for the year 1957 against the elevator, machinery, and fixtures at a valuation of $204,000.00, amounting to a tax of $13,239.60, and for the year 1958 at a valuation of $131,300, amounting to a tax of $8,580.46. Of the 1957 assessment, $166,-720 was against the structures, and the remaining $37,280 was against the machinery and fixtures; while as to the 1958 assessment, $98,565.20 was against the structures and the balance of $32,734.80 was assessed against the machinery and fixtures. The properties so assessed are classified as tangible personal property. The grain corporation has exercised its prerogative of contest of the entire tax upon the basis that the properties thus taxed constitute real property and not tangible personal property and, also, that since the title to the land is in the Hillsborough County Port Authority, the property is tax exempt. The grain corporation has tendered into the registry of the court the pro rata amounts applicable to the machinery and fixtures in the event the tax is held valid as to these properties so assessed. The amounts tendered for the years 1957 and 1958, respectively, are $2,322.69 and $2,053.65.
Under section 20 of the Port Authority Act, Chapter 23338, Special Acts of 1945, there is the provision that the Port Authority shall be exempt from all taxation upon any of its projects and property, whether real or personal, tangible or intangible. The chancellor determined that the assessments as a whole are valid. His opinion laid considerable emphasis upon the alleged tax exempt status of the property, applying article XVI, section 16 of the Florida Constitution, F.S.A.:
“The property of all corporations, * * * shall be subject to taxation un *309 less such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes.”
The chancellor reasoned that use and ownership must go hand in hand to justify exemption and that the land, although owned by an exempt body, was being used by a private corporation. He then expressed his opinion that the grain corporation’s elevator was taxable.
It is not essential that the question of exempt status be considered, as the problem in the instant proceeding is controlled by principles which concern the classification of the property assessed as tangible personal property. This is a specific issue raised and urged on this appeal by the grain corporation.
The principal lease from the Port Authority provides “that all buildings and structures of every kind and nature erected by the Tenant on said demised premises shall, at the end of the term or earlier termination of this lease, be and become the property of the Authority and shall be left in good condition and repair, ordinary wear and damage by the elements excepted” and “that any machinery or equipment installed in any building or structures shall not be considered as part of such building or structure even though attached to the realty.” It provides further that the tenant may remove all its personal property at the expiration or earlier termination of the lease, provided the tenant is not in default; but it provides that buildings or structures shall not be removed by the tenant, unless comparably replaced, except upon the prior written authorization of the Authority.
Article IX, section 1 of the Florida Constitution provides in part that “the Legislature shall provide for a uniform and equal rate of taxation, * * Section 3 of article IX provides that “No tax shall be levied except in pursuance of law,” and section 5 of article IX provides that all counties and municipalities shall assess and impose taxes for county and municipal purposes “upon the principles established for State taxation.” However, no ad valorem tax for state purposes is now authorized on real or personal property. Therefore, under constitutional mandate, taxes must be levied pursuant to law. Accordingly, the legislature has enacted statutes defining different classes of property. As they relate to real and personal property, these legislative enactments are constituted in sections 192.02 and 192.03, Florida Statutes, F.S.A.:
“192.02 Real property defined. — ■ For the purpose of taxation ‘real property’ shall be construed to include lands and all buildings, fixtures and other improvements thereon. When used in connection with taxation the terms ‘land’ and ‘real estate’ shall be construed as having the same meaning as real property above defined.
“192.03 Personal property defined.— For the purpose of taxation ‘personal property’ shall be construed to include all goods and chattels, money and effects, boats and vessels, debts due or to become due from solvent debtors whether on account, contract, note or otherwise, and all public stocks or shares in incorporated or unincorporated companies.”
Further concerning classification and definition of tangible personal property, the provision under section 200.01, Florida Statutes, F.S.A., is that such property shall include :
“ * * * all goods, chattels, boats, vessels, vehicles (except motor vehicles), animals and other articles of value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents. The words ‘personal property’ as used in this chapter shall be synonymous with ‘tangible personal property.’ ”
This classification of real property as it is defined by section 192.02 is consonant with the general law. The Supreme Court, in the case of Yowell v. Rogers, 1937, 128 *310 Fla. 881, 175 So. 772, stated that improvements such as a dwelling become a part of the freehold and must be assessed with and as a part of the real property and that a conveyance of the lot in fee would carry title to the dwelling also.
A question similar to the one here involved was presented to the Supreme Court for determination in Mariani v. Schleman, Fla.1957, 94 So.2d 829, but was not decided because of failure of the parties to have presented this issue to the lower court.
It was the conclusion of the Supreme Court in the case of Park-N-Shop, Inc. v. Sparkman, Fla.1957, 99 So.2d 571, 574, a similar case, that the lessee’s interest was neither tangible nor intangible personal property as presently defined and that the tax statutes do not contain any provisions for the specific assessment of a lessee’s interest in real property. This opinion, germane to the instant situation, contains the following statement:
“In our examination of the tax statutes we have not found provisions for the specific assessment of the lessees’ interest and we have been referred to none, although we are not conscious of any reason why the legislature could not set up machinery for that purpose in situations such as that presented in this case, but we are satisfied that the interests of lessees are neither tangible nor intangible personal property as presently defined.
“We conclude by quoting Sec. 3 of Article IX of the Constitution: ‘No tax shall be levied except in pursuance of law.’ ”
The complaint definitely asserted that the grain elevator, consisting of three large poured concrete silos, so connected as to form one structure, and four small bins, all resting on pilings sunk many feet within the ground, was a part of the realty. Under the provisions of the lease, title to these structures will inure to the Port Authority upon termination of the lease; and the structures cannot be removed by the tenant except upon prior written authorization from the Authority unless comparably replaced.
There appears to be no basis for taxation of permanent improvements, such as are here concerned, as tangible personal property situated on the land. However, as indicated by the Supreme Court in the Park-N-Shop, Inc. v. Sparkman case, supra, “ * * * we are not conscious of any reason why the legislature could not set up machinery for that purpose in situations such as that presented in this case * * Instead, through consideration of the nature of the structures involved and from a study of the lease terms, it is indicated that the described structures fall squarely within the definition of real property spelled out in section 192.02; and their assessment as tangible personal property described as “improvements on leased land” was without authority and, therefore, invalid. That which is attempted to be accomplished is to impose a specific assessment against a leasehold interest by classifying as tangible personal property those structures which became a part of the real property. The chancellor accordingly erred in his judgment that the amended complaint as supplemented fell short of stating a cause for relief insofar as it applied to the grain elevator.
As to the machinery and so-called fixtures installed for operation of the elevator, this rationale is not applicable, even though fixtures are included within the definition of real property as seen in section 192.02. Solution of this phase of the case requires a determination of whether the machinery and equipment actually constitute fixtures as a part of land.
There is a generally accepted definition of a fixture expressed in the case of Commercial Finance Co. v. Brooksville Hotel Co., 1929, 98 Fla. 410, 123 So. 814, 816, 64 A.L.R. 1219:
“A fixture is an article which was a chattel, but which, by being physically *311 annexed or affixed to the realty by someone having an interest in the soil, becomes part and parcel of it.”
Further in that case the court said:
“In the case of Seedhouse v. Broward, 34 Fla. 509, 16 So. 425, 429, this court said, speaking through Mr. Justice Taylor, that ‘In establishing the fact whether a given thing is or is not a fixture upon land, the intention of the ozvner in placing it there, to be gathered from his declarations, and from the character, relations, and purposes of the property, is an important element, sometimes of controlling importance.’ ”
The case of Burbridge v. Therrell, 1938, 110 Fla. 6, 148 So. 204, 206, although dealing with fixtures as subject to the lien of a mortgage and not under a question of taxation, occasioned certain significant observations by the Supreme Court. In its opinion, the court recognized that fixtures and structures might actually or constructively be annexed to land so as to become a part of mortgaged security, but observed also that structures of a movable character might be so placed or constructed as not to constitute ab initio a part of the realty, hut instead would constitute personalty. 'The court stated:
“It is well recognized that the nature of a structure viewed in connection with a preliminary or contemporaneous ■agreement for its erection, may justify the conclusion that the structure as ■agreed to be placed and actually set up never in the first instance becomes a part of the realty, because of the under■standing by reason of which it is so •placed and maintained as to at all times continue to be personal property.”
'Generally, see also 14 Fla.Jur., Fixtures, section 2, p. 390, section 6, p. 393, section 7, p. 394, and section 15, p. 402.
The covenants of the primary lease clearly reveal the intention to exclude machinery ;and equipment, such as the grain corporation has installed, from classification as fixtures, as they are generally defined, which otherwise through annexation would become a part of the realty. The title to the machinery and equipment, under the lease, is specified to remain in the tenant; and this is directly opposite to the provision concerning buildings such as the grain elevator which become the property of the Port Authority. Hence the result is that the machinery and equipment remain the tangible personal property of the Illinois Grain Corporation.
In the light of these observations, it is clear that the assessment upon the machinery and equipment was a valid assessment of tangible personal property. The complaint was deficient in affording a predicate for relief as to the machinery and equipment.
The cause is reversed for proceedings conforming to the views expressed in this opinion.
Reversed.
ALLEN, C. J., and SHANNON, J., concur.