196 So.2d 461 (1967)
Walter "Skip" WETJEN, Appellant,
v.
L.H. WILLIAMSON, d/b/a Five Flags Motor Speedway and Five Flags Motor Speedway, Inc., a Florida Corporation, Appellees.
No. H-152.
District Court of Appeal of Florida. First District.
March 14, 1967.
Rehearing Denied April 5, 1967.
*462 Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellant.
Grover C. Robinson, Jr., Pensacola, for appellees.
RAWLS, Chief Judge.
Plaintiff Walter Wetjen is appealing from an adverse judgment holding that certain unattached stadium seats are permanent improvements on the leased property and belong to the landlord.
The primary question on this appeal is, Are the heavy unattached stadium seats trade fixtures or chattels which can be removed by the tenant at the termination of the lease? We find that they are and reverse.
Wetjen had a one year lease on a stock car race track in Escambia County known as Five Flags Motor Speedway. The lease provided for a monthly rental of $325.00 and granted the lessee an option (which he exercised) to renew for one additional year. Wetjen testified that he made improvements which he knew could not be removed and contemplated expending some $25,000 for resurfacing the race track, under the impression that a long term lease would be granted by the lessors.
The parties had discussed the use of the track for night racing, and the lease specifically provided that poles and lighting fixtures installed and paid for by the lessee could be removed during the term of the lease. The lease did not mention removal of stadium seats, but it did provide that if the lessee failed to comply with the terms thereof, he would not remove his "goods, wares, merchandise, furniture or fixtures" until the landlord's lien had been satisfied. At the expiration of the lease both parties agreed that the rent was fully paid, and there was no showing of any other breach of the lease. However, prior to the expiration of the lease the landlord refused to allow the tenant to remove the unattached stadium seats which he had installed plus some other items of personal property including lighting fixtures, broadcasting and sound equipment, etc., so Wetjen brought this action in equity seeking a court order allowing him to remove these items.
The property was not in the best condition on May 2, 1963, when the lessee took possession. Immediately thereafter Lessee Wetjen repaired the track, painted the premises, installed lighting fixtures for night racing, tore down 5 sound trumpets which had been installed 8 or 10 years before, replaced leaning poles, tore down an old tin shed roof which covered only 4 or 5 rows of bleacher seats, installed a new broadcasting system, began enlarging the stadium to accommodate an additional 800 people with permanent cinder block and wood seats of the same type already there, put in solid concrete steps (50 to 60 feet long and 10 feet wide) in front of the concession stand, and for safety purposes built a 100 foot crash wall to protect the pits. Within 4 months after executing the lease and while the first seating addition was under construction, Wetjen had an opportunity to buy 100 prestressed concrete bleacher seats (each 24 feet long and weighing about 3600 pounds) from the Brent Christian School. He and his employee, Lynn Toney, went to see their landlord, Williamson, to get a new lease of long enough duration to warrant further improvements and to discuss the installation of the prestressed seats in a temporary manner so they could be removed at the end of the lease term. According to the testimony of Wetjen and Toney, Williamson assured them that he and his son did not desire to operate the track ever again, that his son had a job in Miami, and that as soon as his son came up they would renegotiate the lease for as long a term as Wetjen wanted. Williamson denied this meeting and discussion but he and his wife visited the track periodically and took *463 pictures of the improvements to send to their son.
Wetjen proceeded to buy the 100 seats in August, 1963, and built a permanent foundation and stringers necessary to receive them. He hired E.H. Edwards, who was in the heavy moving business and who did this type of work for Southern Prestress Concrete, to move the seats and set them in place. Wetjen consulted his lawyer and thereafter gave Edwards specific instructions not to weld the seats to the foundation. Edwards testified that these seats are usually welded, that this was the only case he could remember where they were not welded, and that they had been welded at the Brent Christian School. Deitrick, an employee of Southern Prestress Concrete, stated that it was a matter of opinion as to whether the seats should be welded, that they were heavy enough to withstand an uplift weight of 30 pounds per square foot, and that his firm does not deem it necessary to weld these seats to the foundation though they often are because contracts usually require welding. Both men agreed that the seats can be moved by crane, truck and trailer without damage to the foundations or to the property.
In order to make the stands uniform Wetjen purchased 21 more prestressed concrete seats from Southern Prestress Concrete, and in front of the prestress seats he added several rows of cinder block seats, extended the guard rail, built a 10 foot walkway in the bleacher area, cleared the stumps from the parking area, and made other permanent improvements. Wetjen testified that the permanent improvements which he knew could not be moved cost him a total of $14,477.75 and the 121 prestress seats cost him $7,500.00.
Williamson testified that he had not been consulted about the prestressed concrete seats, that he never voiced any disagreement about the improvements made, that he was never asked to and never paid anything on the improvements, that Wetjen's rent was paid up, and that the ticket booth built by Wetjen was Wetjen's "because it is removable."
The chancellor found that the prestress concrete seats are a permanent improvement and are the property of defendant Five Flags Motor Speedway, Inc. He enjoined Wetjen from removal of any objects from the premises except the ticket office and the poles for lighting fixtures and held that since the substantial improvements have enriched the defendant, it would be inequitable to award costs to the defendant. Plaintiff Wetjen appealed this decree.
The appellant contends that the unattached, prestressed concrete seats are not fixtures to the realty but retain the character of chattels, and if they are fixtures, they are trade fixtures. In either case they are removable by the tenant.
The landmark case in Florida is Commerical Finance Company v. Brooksville Hotel Co.[1] which held that a fixture is an article which was a chattel, but which, by being physically annexed or affixed to the realty by someone having an interest in the soil, becomes a part and parcel of it. That case sets forth the three following tests to determine if an article is a fixture:
"First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected; and, third, the intention of the party making the annexation that it shall be a permanent accession to the freehold."
Both parties concede that there was no actual annexation to the realty as required in the first test, but that bleacher seats in a race track do meet the second test of appropriateness. The third test, often considered the most controlling of the three,  the intent of the party making the *464 annexation  is determined from the nature of the article annexed, the relationship of the parties, the type of structure, mode of annexation, and the use for which the annexation was made. In proving this test the declarations of the party making the annexation may be considered.[2] Here expensive bleachers were installed by a tenant under a short term lease. His business is that of operating race tracks in which this particular type bleacher seat is often used. By his own declaration he would not have purchased these seats if he would not be allowed to remove them at the termination of his tenancy. The fact that they were not permanently attached, as was customary, supports the truth of his statement. Furthermore, where the relationship of landlord-tenant exists, the presumption is in favor of the right of a tenant to remove structures or articles he has placed on the leased property for his own purpose.[3] There is not one iota of evidence that Wetjen ever intended the seats to be a permanent annexation to the freehold. Since these seats failed to meet two of the tests, they never became fixtures and never lost their characteristics as chattels.
Appellant also contends that these concrete seats were trade fixtures  that is, property placed upon land by a tenant for purposes of his trade  which are regarded as personalty rather than realty and may be removed by the tenant at the end of his term. The trade fixture rule is an important exception to the general fixture rule at common law. It is based upon the principles of public policy and is designed to encourage trade and manufacturing. A tenant has the right of removal of these fixtures, even in the absence of express stipulation, provided removal does not substantially injure the freehold.[4] Florida has recognized the trade fixture exception.[5]
The landowner appellee contends that this court should adopt the doctrine of constructive annexation on the theory that the unattached seats are annexed to the realty by the force of gravity. However these concrete seats fall within almost every exception to the rule relating to annexation to the freehold, so even the doctrine of constructive annexation would not help the appellee-owner who procured the lease form which not only did not require the business tenant to forfeit all fixtures or trade fixtures but which specifically provided that the lessee "will not remove his * * * fixtures from the said premises until the terms of this lease are satisfied." This negative provision indicates that the parties themselves contemplated the removal of all fixtures at the termination of the tenancy if all covenants thereof have been satisfied.
Appellee cross assigned as error the chancellor's failure to award to the appellee attorney's fees, costs and damages for some alleged minor claims of no established value, such as, the 2 or 3 trees removed in the process of clearing and building a larger parking area, a valuable asset for a race track. There is no basis for awarding costs and attorney's fees. In view of the substantial improvements which appellant testified were permanent and were intended to remain on the land, which have greatly enriched the appellee, and which were built upon the premises with the knowledge and acquiescence of the appellee, we find no error in denying damages.
The chancellor's decree with reference to the prestressed concrete seats is reversed; otherwise, the decree is affirmed.
Reversed in part, affirmed in part.
WIGGINTON and CARROLL, DONALD K., JJ., concur.
NOTES
[1] Commercial Finance Company v. Brooksville Hotel Co., 98 Fla. 410, 123 So. 814, 64 A.L.R. 1219 (1929).
[2] Greenwald v. Graham, 100 Fla. 818, 130 So. 608 (1930), and Brown v. Marzyck, 19 Fla. 840 (1883).
[3] 17 Fla.Jur., Fixtures, § 18; 22 Am.Jur., Fixtures, § 12.
[4] 22 Am.Jur., Fixtures, § 61.
[5] Meena v. Drousiotis, 146 Fla. 168, 200 So. 362 (1941).