In the Matter of GRAY INDUSTRIES, INC., Bankrupt.

MATHEWS CORPORATION, Appellant,

v.

Herbert S. FREEHLING, Trustee in Bankruptcy, Appellee.

No. 77–1616.

United States Court of Appeals, Fifth Circuit.

May 23, 1979.

Rehearing Denied June 20, 1979.

Thomas R. Schwarz, Fort Lauderdale, Fla., for appellant.

Bruce A. Weihe, Fort Lauderdale, Fla., for appellee.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and CAMPBELL,* District Judge.

WILLIAM J. CAMPBELL, District Judge:

Following a trial the bankruptcy court determined that all the equipment located on a parcel of the bankrupt's real estate, on which a blood fractionation plant had been constructed, were items of personal property, and that appellant Mathews Corporation (Mathews) did not have a valid lien against the proceeds realized from the trustee's sale of that equipment. The district court af-

---

* District Judge of the Northern District of Illinois, sitting by designation.

firmed the findings and conclusions of the bankruptcy court, and held that the bankruptcy court properly refrained from ruling on Mathews' alternative claims to the proceeds of the sale on the basis of an alleged assigned security interest therein and under the Florida Mechanic's Lien Statutes. We reverse and remand for further proceedings.

The protracted and tortured history of this case begins on April 4, 1972, with the filing of a Petition for Arrangement by Gray Industries, Inc. under the provisions of Chapter XI of the Bankruptcy Act. On December 7, 1972, the bankruptcy court entered an order determining that Mathews, a construction contractor, had a valid lien in the amount of $299,500.00 on a parcel of the real estate referred to by the parties and the courts below as Parcel III. In the same order the bankruptcy court determined that American National Bank and Trust Company of Ft. Lauderdale (American), the construction mortgagee, had a valid lien on Parcel III in the amount of $400,000.00 plus interest. Since the order determining validity of liens was entered during the Chapter XI proceedings, no priority of liens was established.

Gray Industries, Inc. failed to consummate a Plan of Arrangement and, on August 20, 1973, was adjudicated a bankrupt; the trustee was appointed on the same date.

On July 10, 1974, the trustee sold at auction the equipment located on Parcel III.[1] The bankruptcy judge confirmed the sale on the following day. Thereafter Mathews filed a complaint seeking to determine priority of liens. Named as defendants were the trustee and the other creditors of the bankrupt, among whom was American. Mathews' amended complaint asserted "a lien prior and superior in dignity to all other asserted liens" on Parcel III and, further, a prior lien upon all personal property located on the premises because Mathews had installed the personal property on the real property. American answered by denying that Mathews possessed a prior and superior lien.

The bankruptcy court dismissed the amended complaint. On appeal the district court reversed the order of dismissal and directed the bankruptcy court to dispose of Mathews' amended complaint "upon a factual examination of the property sold from Parcel III on July 10, 1974, to determine its character as personalty or fixtures so as to permit the proper allocation of the sale proceeds."

### I. Fixtures Issue

■ The trial conducted by the bankruptcy court concerned the issue of whether the Parcel III equipment had the legal character of personalty or fixture. The bankruptcy court found that the building on Parcel III was constructed for the purpose of operating a blood fractionation plant; that the equipment installed in the building was ordered and purchased for installation in the building as part and parcel of the plant; that much of the equipment was affixed to the building in some manner, such as by bolts, to pipes running through the building, or set upon concrete foundations or cradles particularly constructed for the placement of the equipment; and that it was unquestionably the intention of the bankrupt that the equipment was to become part and parcel of the blood fractionation plant such that removal would prevent the successful operation of that business. On the basis of these findings, which are not clearly erroneous, the bankruptcy court held that the equipment was personalty, concluding that since the equipment could be removed without damaging the building by enlarging or making openings therein, the equipment was not part of the realty. In short, the bankruptcy court found that at the time of installation the items of equipment were intended to be permanent accretions to the freehold, but that those items were personalty because they could be removed without damage to the building. We find that

---

1. The record reflects that the trustee received about $129,000.00 from the sale of the equipment.

the bankruptcy court employed an erroneous standard in reaching its conclusion on the legal character of the items sold by the trustee.

The issue of whether a thing can be characterized as personalty or fixture is essentially a factual question. *First Federal Savings & Loan Association of Okaloosa County v. Stoval*, 289 So.2d 32 (1st D.C.A. Fla.1974). The factors to be considered in making the determination of whether a thing is a fixture or retains its character as a chattel have been long established by the Florida Supreme Court in *Commercial Finance Co. v. Brooksville Hotel Co.*, 98 Fla. 410, 123 So. 814, 816 (1929)[2]:

> "First, actual annexation to the realty or something appurtenant thereto; second, appropriateness to the use or purpose of that part of the realty with which it is connected; and, third, the intention of the party making the annexation that it shall be a permanent accession to the freehold. What that intention was in making the annexation is inferred from the following facts: (a) the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; and (d) the purpose or use for which the annexation had been made."

See also: *Greenwald v. Graham*, 100 Fla. 818, 130 So. 608, 610 (1930).

The bankruptcy court's conclusions were based on its view that since the equipment could be and was removed from Parcel III without substantial damage to the premises, the equipment was personalty. Removability of property without damage to the freehold is not a factor set forth in the *Commercial Finance Co.* case, although we believe that removability, viewed as a factor embracing the mode or purpose of annexation, may be relevant to an inquiry into the intent of the person making the annexation. But, the bankruptcy court found that the equipment was intended by the bankrupt "to become part and parcel of the

blood fractionation plant." Thus, the bankruptcy court found from the evidence at trial that the intent to permanently affix the equipment was "unquestionable," but reached the incongruous conclusion that the equipment was personalty because it could be removed without damage to the premises.

Our review of the evidence under the principles established in the *Commercial Finance Co.* case reveals that some items of the equipment were clearly personalty at the time of the sale, and thus the result reached by the bankruptcy court with respect to this equipment was correct. The uncontradicted evidence showed that the Tri-Clover pumps were mounted on wheels and were designed to be portable; the 60, 224, and 308 gallon tanks were similarly portable; the 6 lightening agitators were still in the original shipping cartons supplied by the manufacturer; and, the sparkler filters were new and located on the original shipping skid. No evidence was adduced tending to show that any of these items were actually annexed to Parcel III, and hence must be considered personalty.

The remaining items of equipment are not so easily characterized. The evidence showed that the building constructed on Parcel III functioned as a shell enclosing a process area, which was a hermetically sealed unit. Successful operation of a blood fractionation plant required the design and construction of such a unit, which in this case comprised about 60% of the area enclosed by the shell on Parcel III. The entire plant was designed and constructed to be operated through several interrelated systems such as the methylene chloride brine, electrical, alcohol, nitrogen, compressed air, and distilled water systems. There is conflicting evidence in the record concerning how the various items of equipment were connected to these systems. Since this case must be remanded for ruling on Mathews' alternative claims, we feel that the bankruptcy judge is in the best

---

2. At least one Florida reviewing court in recent times had referred to the *Commercial Finance Co.* case as a "landmark" decision. See

*Wetjen v. Williamson*, 196 So.2d 461, 463 (1st D.C.A. Fla.1967).

position to determine under the principles we have reiterated from the *Commercial Finance Co.* case the legal character of the equipment sold.

## II. Mathews' Alternative Claims

■ The bankruptcy court did not rule on what rights, if any, Mathews had acquired by virtue of an assignment of American's secured interest in Parcel III.[3] It appears that several months prior to trial American sought to foreclose its lien on Parcel III by instituting an action in the Broward County Circuit Court. Mathews objected to the foreclosure, contending that American had wrongfully dispersed the construction loan funds. Mathews and American settled their differences in the foreclosure proceeding, and as a result American assigned its lien claim in the bankruptcy proceeding to Mathews.

At the beginning of the trial counsel for Mathews announced his appearance on behalf of Mathews and stated:

"We hold an assignment of the position of American National Bank in this matter. To that extent we are representing them." [Tr. 3].

The bankruptcy court acknowledged Mathews as assignee of American's right. Counsel for the trustee then sought clarification of counsel for Mathews representing American. Counsel for Mathews stated that he represented Mathews:

"To the extent we are the real party in interest as to their security claim." [Tr. 4]

3. In addition to claiming the proceeds from the sale of the equipment under the assigned claim of American, Mathews also asserts that it is entitled to $60,000.00 held by the trustee. This sum represents forfeited earnest money deposits received by the trustee from potential purchasers of the bankrupt's real estate. Mathews claims that it is entitled to these deposits by virtue of a clause in the American mortgage entitling the mortgagee to rents, profits, and issues. The record is unclear as to whether the $60,000.00 was received with respect to Parcel III, or whether the earnest money was received with respect to other real estate held by the bankrupt. On remand, the bankruptcy court should determine the priority and extent of the

Counsel for the trustee did not object to Mathews proceeding as the real party in interest of the American claim. Later, the assignment and mortgage were introduced and received in evidence, and the bankruptcy court noted that it would consider the American claim and assignment. The bankruptcy court never ruled on the priority of the American claim, or whether Mathews was entitled to assert the claim by way of the assignment.[4]

The bankruptcy court also failed to rule on Mathews' alternative claim that if the items sold were personalty, it had a claim to the proceeds of the sale under the Florida Mechanic's Lien Statutes pertaining to personal property.[5] Mathews adduced evidence at trial that it had installed much of the equipment, and that approximately two-thirds of the dollar amount of its validated claim represented the value of its labor in installing the various equipment.

The district court affirmed the bankruptcy court's refusal to consider or rule upon this claim because Mathews' complaint failed to claim rights under Part II of Chapter 713 of the Florida statutes (pertaining to liens upon personal property). The record reflects, however, that paragraph 3 of Mathews' amended complaint asserted:

" . . . a valid prior lien upon all the personal property located on the premises by virtue of this Court's aforementioned Order of December 7, 1972, and, in addition, because Plaintiff, Mathews Corporation, installed the personal property on the real property hereinabove described."

assigned American interest, and whether by virtue thereof Mathews has any claim to the forfeited earnest money deposits.

4. During the trial the bankruptcy court indicated that it intended to enter a default judgment against American because American had not appeared at trial, even though the court knew that the real party in interest of American's claim was Mathews under the assignment. No default judgment was ever entered.

5. F.S.A. § 713.50 *et seq.* provide for liens upon personal property of various descriptions in favor of persons performing labor upon the personal property.

Although the particular chapter and section of the Florida statutes upon which this claim was based were not cited in paragraph 3 of the amended complaint, there is nothing to suggest that Mathews was required to so plead. The amended complaint clearly and concisely asserted a lien upon the personal property located on Parcel III. Rule 8(f), F.R.Civ.P., made applicable to adversarial bankruptcy proceedings by Rule 708 of the Bankruptcy Rules, required the bankruptcy court to construe Mathews' amended complaint so as to do substantial justice. We find that the bankruptcy court's refusal to do so, and its failure to rule on the claim under the American assignment constitute error requiring reversal and remand for consideration of these claims.[6]

For the foregoing reasons the order of the district court affirming the findings and conclusions of the bankruptcy court is hereby reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

JOHN R. BROWN, Chief Judge, concurring:

I concur in the result and in that portion of the Court's opinion wherein we hold that the Bankruptcy Court must consider Mathews' claim as an assignee of American's interest. The failure to do so was an error requiring reversal and remand.

---

**6.** In remanding this case for consideration of Mathews' alternative claims we intimate no opinion on the merits of those claims. We merely hold that the mechanic's lien claim and the assigned claim of American were adequately, albeit inartfully, presented to the bankruptcy court, and that it was error for that court to refrain from considering them.