458 So.2d 835 (1984)
COUNTRY MANORS ASSOCIATION, INC., a Florida Corporation, Not for Profit, Appellant,
v.
MASTER ANTENNA SYSTEMS, INC., a Florida Corporation, Appellee.
Nos. 83-1737, 84-181.
District Court of Appeal of Florida, Fourth District.
November 7, 1984.
Rod Tennyson, Powell, Tennyson & St. John, West Palm Beach, for appellant.
*836 Peter J. Aldrich, Gunster, Yoakley, Criser & Stewart, Palm Beach, for appellee.
PER CURIAM.
These two non-final appeals, Case Nos. 83-1737 and 84-181, have been consolidated.
Case No. 83-1737 seeks review of the trial court's determination of ownership in favor of appellee of a certain central antenna system installed and maintained by the appellee, Master Antenna Systems, Inc. ("MAS") on the premises of Country Manor Association, Inc. ("Association"). The Association is a condominium association as provided in Chapter 718, Florida Statutes (1983). The appealed judgment also granted MAS an easement on the Association's property to service the system as long as it is installed. In reaching these determinations, the trial court made the following findings of fact and conclusions of law:
THIS MATTER came before the Court by way of a Complaint filed by Country Manor Condominium Association. During the initial development of Country Manor's Condominium Complex, the Defendant, Master Antenna Systems, Inc., entered into an agreement with the developer whereby Master Antenna Systems (hereinafter referred to as MAS) agreed it would install all of the necessary wiring to provide a central antenna system for the complex at no cost to the developer. The developer said that MAS would always own the property.
Subsequently, the Board of Directors, comprised of the owners of properties in the condominium complex, took over the property and administration of the Country Manor Complex. The Association subsequently dismantled much of the MAS equipment, and ordered MAS off of the property. However, the Association wishes to retain all of the underground wiring going to the various complexes. The Association also wishes to retain those installations which are connected and contained inside of the walls of the individual units.
Testimony indicated that while the developer never formally told the unit owners that the cable system [was] owned by MAS, however, everyone knew that MAS had the cable franchise and unit owners paid MAS on a monthly basis. The Plaintiff takes the position, however, that they entered into no such agreement with MAS and even if they did, at this point and time, they could reject the service. MAS takes the position that Country Manor does not own the system, and could not own it because the developer could have only have transferred to them what he owned at the time of the transfer, and at that time, he did not own the system. The Defendants, therefore, feel that if they are no longer allowed on the property and are ordered to remove themselves from the property, that they have a right to take the underground cables which were bought and paid for by their money. The Plaintiff alleged that these are fixtures and therefore should remain in the land.
It appears from the testimony that the developer always intended that MAS would have an easement and be considered as a utility with those rights of egress and ingress on condominium property for the purposes of maintaining the utility contained in the agreement. In fact, in an agreement between Biltmore Realty, as developer of the property, and MAS, signed June 11, 1973, the parties agreed in Article VIII, in part,
"The mass and underground distribution system described herein shall become and remain the property of the contractor (MAS, Inc.), contractor shall have the right to sell in contractor's sole discretion such system to the Country Manor's Association to be hereafter formed, or to any other purchaser ..."
This agreement which was turned over to the Board of Directors, when formed, anticipated that the contractor, MAS, would have the right to sell his property to someone else. While the Court is aware that there is no easement recorded, the Court finds, as a matter of intent, *837 there is an implied easement given for the purpose of servicing the system's equipment. The Court further finds that the system belongs to the Defendant, and it would be an unjust taking of the Defendant's property to allow the Association to take the underground system without just compensation to the Defendant. The Court also finds that the connections and installations within the walls of the condominium, of course are fixtures, and therefore could not be removed by the Defendant. They lost the identity of being his property once they were installed within the individual units. It is thereupon,
ORDERED:
1. The Judgment is for the Defendant as to the ownership of the antenna system. It is further
2. ORDERED that so long as the system is installed and the Defendant services members of the association, he shall have the right of easement over the properties necessary to service his equipment.
3. This Court retains jurisdiction of this cause for such further orders as may be necessary.
ORDERED this 15th day of July, 1983, at West Palm Beach, Palm Beach County, Florida.
Substantial, competent evidence supports the conclusion that MAS is the owner of the underground system. Rousselle v. B & H Construction Co., 358 So.2d 614 (Fla. 1st DCA 1978). We therefore affirm that portion of the judgment so holding. In reaching this decision we also hold that the underground system, together with the connections and installations within the walls, are not common elements. Section 718.103(6), Florida Statutes (1983), defines common elements to mean the portions of the condominium property not included in the units. Condominium property is defined by Section 718.103(11), Florida Statutes (1983), to mean the lands, leaseholds, and personal property that are subjected to condominium ownership. The evidence is uncontroverted that the cable system was never subjected to condominium ownership. Not only is it reflected that it was always the developer's intention that MAS own the system as found by the trial court, but it was also the unit owners' understanding that MAS owned the system. This is unquestionably supported by the testimony of various Association board members. In fact, it is an understanding which the Association held for the some ten years in question until it was decided that MAS's services were no longer desired. Nor is there any evidence that the developer or the unit owners ever bought the system, or paid for the cost of repairs and maintenance of the system. Were the system a common element, these costs would have been the Association's responsibility. § 718.113, Fla. Stat. (1977). Until such time, then, that the system becomes subject to condominium ownership, the system cannot be included as part of the common elements as further described in Section 718.108, Florida Statutes (1983).
Although the findings of a lower tribunal are accorded a heavy presumption of correctness when they arrive at our doorstep, that presumption has been overcome here. Wright v. Wright, 431 So.2d 177 (Fla. 5th DCA 1983). We determine that there is no evidence that the inner wall connections and installations of the system are fixtures. Since the intention of the party making the annexation has been held to be a primary test in determining whether an article is a fixture, no evidence of such an intent requires a ruling that the articles were in fact not fixtures. 27 Fla. Jur.2d Fixtures § 4; Commercial Finance Co. v. Brooksville Hotel Co., 98 Fla. 410, 123 So. 814 (1929). Again, the uncontroverted evidence shows that at the time of installation, MAS contracted that the property would always remain the property of MAS. Therefore, there could be no loss of identity as found by the trial court. Nor was there evidence that removal of the system would result in material or substantial injury to the real property. See Dependable Air Conditioning and Appliances, Inc. v. Office of the Treasurer, 400 So.2d 117 *838 (Fla. 4th DCA 1981); 27 Fla. Jur.2d Fixtures §§ 2-6.
Finally, we do not agree that the substantial, competent evidence necessitates that the easement in question was one of implication. We, therefore, disagree with the trial court's decision holding such. Instead, we hold that an express easement to service that system did earlier exist. Originally MAS's entitlement to a service easement was expressly given by its written contract with the developer. By the time that contract expired by its own terms, MAS rightfully held an express easement to service its system pursuant to a reservation in the Declaration of Condominium. That reservation provided for utility easements throughout the condominium property as may be required for utility services. We are aware of the fact that MAS is not a federally regulated public utility, but the evidence shows that MAS holds a county license to operate as a cable TV utility. However, the Association effectively exercised its statutory rights to terminate any of its agreements with MAS pursuant to Section 718.302, Florida Statutes (1983). See also § 711.66, Fla. Stat. (1974) Supp. Because the unit owners have cancelled the services of MAS, MAS is no longer entitled to use of the express easement to service the system.
In conclusion, we emphasize that these appeals are interlocutory. Therefore, a number of questions and counterclaims are yet to be settled by the trial court, one of which is the fair market value of the system due MAS should it be determined to leave the system intact. We only decide today to affirm the trial court's decision to the extent that it held that MAS owns the system. In all other respects we reverse and remand for further proceedings consistent herewith.
Affirmed in part; reversed in part and remanded for further proceedings consistent herewith.
In Case No. 84-181 we affirm the award of costs to MAS.
ANSTEAD, C.J., and LETTS and WALDEN, JJ., concur.