MAY, J.
A conflict between a cable television provider and a condominium association forms the basis for this appeal. Comcast appeals an order upholding the condominium association’s termination of a cable television agreement, pursuant to section 718.302, Fla. Stat. (2002).[1] It raises numerous issues concerning the validity of the termination. We find no error and affirm, but write to address the application of section 718.302.
In 2002 and prior to incorporating the homeowner’s association, the developer entered into an MDU Broadband Services Agreement that provided Comcast[2] with an easement to install its cables in the condominium development. The parties also entered into a Bulk Rate Addendum that provided for all residents to receive Comcast’s cable television services at a discounted monthly rate and a Pre-Wire Installation Addendum.
The Association received cable television services at a discounted rate, a character generator, and a security camera. Com-cast paid for the easement and for material and labor for its distribution system and facilities. Every unit owner received and paid for the cable service as part of the monthly maintenance fee. In turn, the Association made payments to Comcast.
The agreement’s termination provision provided that the “Agreement may be terminated prior to expiration of its term *841 subject to conditions and regulations required under 718 of Florida Statutes .... ” The evidence established that the developer’s representative specifically requested that the agreement refer to chapter 718 because he intended to insure that after turnover to the unit owners, the Association would have the right to terminate the contract upon a timely 75% vote of the unit owners.
Following the incorporation of the homeowner’s association and the developer’s hand over, the unit owners voted to terminate the agreement. The Association’s counsel sent Comcast written notice of termination in accordance with section 718.302. Two additional letters were sent, notifying Comcast of the Association’s intent to terminate the agreement and addenda and instructing Comcast to open its distribution lock boxes.
Comcast brought an action for declaratory relief, breach of the agreement and addenda, trespass, and permanent injunc-tive relief. Before a hearing could be held on Comcast’s Emergency Motion for Temporary Injunction, the Association hired a locksmith to drill holes in Comcast’s distribution lock boxes to allow another provider access to Comcast’s cables. As a result, all of the residential units were switched from Comcast to another provider. Com-cast’s wires remained in place in the event a unit owner desired to maintain service with Comcast.
The litigation proceeded on Comcast’s amended complaint, which also sought damages for the drilling. The case was tried non-jury and resulted in a judgment for the Association. Comcast now appeals the adverse judgment.
Comcast argues that the court erred in applying section 718.302 to the agreement and addenda. Specifically, Comcast argues a cable television service contract is not an agreement “that provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium.” § 718.302(1), Fla. Stat. In support, Com-cast relies on the fact that the agreement did not require Comcast to do any management, maintenance, or operation of the condominium. Comcast further argues that the legislature differentiated between “contracts for services” and those “contracts that provide for operation, maintenance, and management of a condominium.” Compare §§ 718.115(1)(d), 718.301(4)(n), and 718.3025(4), Fla. Stat. (“service contracts”) with § 718.302, Fla. Stat. (“operation, maintenance, or management of a condominium association or property serving the unit owners”). We disagree with these arguments and affirm.
We review the application of the statute de novo. Strod v. Lewenstark, 958 So.2d 1138, 1139 (Fla. 4th DCA 2007). In doing so, we conclude, as did the trial court, that section 718.302, Florida Statutes, applies to the agreement and addenda.
Section 718.302, Fla. Stat. (2002), provides in part:
(1) Any grant or reservation made by a declaration, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium shall be fair and reasonable, and such grant, reservation, or contract may be canceled by unit owners other than the developer:
(a) ... the cancellation shall be by concurrence of the owners of not less than 75 percent of the voting interests other *842 than the voting interests owned by the developer....
Comcast installed wires and lock boxes to provide cable television services to all the unit owners. By virtue of the agreement, Comcast operated and maintained the system that it installed.[3] Further, section 718.115(1)(d), Fla. Stat. (2002), provides that the cost of cable television service obtained pursuant to a bulk rate contract is deemed a common expense. Section (1)(a) specifically provides that “[c]ommon expenses include the expenses of the operation, maintenance, repair, replacement, or protection of the common elements and association property .... ” § 718.115(1)(a), Fla. Stat.
Because the agreement provided for the cable television service for all unit owners, the cost was part of the monthly maintenance fee, and the service provider was required to service and maintain the cable television, we conclude that the agreement was one for the “operation, maintenance, or management” of the cable television services. § 718.802(1), Fla. Stat. Therefore section 718.302 applies to the agreement and addenda.[4]
This conclusion is supported by our pri- or decision in Country Manors Association, Inc. v. Master Antenna Systems, Inc., 458 So.2d 835 (Fla. 4th DCA 1984). There, a company entered into an agreement with the developer to provide and maintain a central antenna system for the condominium complex. Subsequently, the association took control and terminated the agreement, pursuant to section 718.302, Florida Statutes (1983). The company filed an action to determine ownership of the central antenna system. We held that the service provider owned the master antenna system that it had installed. In doing so, we acknowledged the unit owners’ right to terminate an agreement that had been entered into by the developer, pursuant to section 718.302.
[T]he Association effectively exercised its statutory rights to terminate any of its agreements with [the company] pursuant to Section 718.302, Fla. Stat. (1983). See also § 711.66, Fla.Stat. (1974) Supp. Because the unit owners have cancelled the services of [the company, it] is no longer entitled to use of the express easement to service the system.
Id. at 838. As we explained in Ainslie v. Levy, 626 So.2d 229 (Fla. 4th DCA 1993), “[t]he purpose of the [1979] statute was to prevent a developer from entering into long term operation and management agreements which would prove onerous to the unit owners” by “providing] a mechanism for the owners to take back control of their condominiums when the developer had sold over 75% of its units.” Id. at 230; see also Tri-Properties, Inc. v. Moonspinner Condo. Ass’n, 447 So.2d 965 (Fla. 1st DCA 1984).
*843 Here, the agreement and addenda were for the “operation, maintenance, or management” of the cable television service provided to unit owners as a common expense. The president of the developer specifically requested reference to Chapter 718 in the agreement to insure that after turnover to the unit owners the Association would have the right under Chapter 718 to terminate the contract upon a vote of the unit owners. After turnover, more than 75% of the unit owners voted to cancel the agreement. In sending the notice of cancellation, the Association properly relied on section 718.302 to terminate the agreement. The trial court correctly enforced the properly executed termination.
We find no merit in the remaining issues raised.

Affirmed.

STEVENSON and LEVINE, JJ., concur.

. The trial courL also found the addenda to the agreement unenforceable, and denied Comcast's claims for declaratory and injunc-tive relief, breach of agreement, and trespass.

. For ease in reading and understanding the facts, Comcast has been substituted for the original contracting party, District Cablevision Limiled Partnership, its predecessor in interest.

. Paragraph five of the agreement provided for the "Association [to] direct all Residents of the Premises who receive Services to report all maintenance or other problems with respect to the Services directly to [Com-cast] ...." Paragraph six provided that Com-cast "will service and maintain the Facilities and provide Services to the Residents of the Premises....”

. We disagree that reference to cable television in section 718.3025(4) suggests that cable television is not within the "operation, maintenance, or management” contemplated in section 718.302. That section refers to instances where the unit owners have the option to pay for services individually and not as part of the maintenance fee paid by all unit owners. See, e.g., Palma Del Mar Condo. Ass’n # 5 of St. Petersburg, Inc. v. Commercial Laundries of W. Fla., Inc., 586 So.2d 315 (Fla.1991).