795 So.2d 991 (2001)
CHANCELLOR MEDIA WHITECO OUTDOOR, etc., et al., Appellant,
v.
DEPARTMENT OF TRANSPORTATION, State of Florida, Appellee.
Nos. 5D00-490, 5D00-491, 5D00-495.
District Court of Appeal of Florida, Fifth District.
July 30, 2001.
Rehearing Denied September 26, 2001.
*992 Aileen M. Reilly and Gerald S. Livingston, of Livingston & Reilly, P.A., Orlando, for Appellant.
Pamela S. Leslie, General Counsel, Vance W. Kidder, Assistant General Counsel, and Marianne A. Trussell, Deputy General Counsel, Department of Transportation, Tallahassee, for Appellee.

ON MOTION FOR REHEARING EN BANC
GRIFFIN, J.
We have elected to consider this matter en banc. We withdraw the prior panel opinion and substitute the following in its stead.
Appellants, Chancellor Media Whiteco Outdoor Corporation, Lamar East Florida, and Universal Outdoor Atlantic Coast, appeal the Final Orders of appellee, the Department of Transportation ["DOT"], revoking certain sign permits. These signs were "nonconforming"[1] to regulations that had become effective after the original placement of the signs. The signs were destroyed in the wildfires of June and July 1998. The question presented is whether the appellants were entitled to reerect the signs. Appellants challenge the hearing officers' findings that: (1) the re-erection of the signs was prohibited by federal law; (2)-the signs were not destroyed by tortious conduct; and (3) the signs were nonconforming.[2]
The key legal issue is the application of House Bill 1535, which became effective during the litigation of this case. The bill provides:
Notwithstanding any other law, regulation, or local ordinance to the contrary, the owners of any nonconforming buildings, houses, businesses, or other appurtenances to real property which were damaged or destroyed during the wildfires that occurred during June and July of 1998, may elect to repair or rebuild such nonconforming structures in likekind, unless prohibited by Federal law or regulation.
23 C.F.R. section 750.707(d)(6) (1999), also in effect at the time, provides:
§ 750.707 Nonconforming signs.
* * *
(d) Maintenance and continuance. In order to maintain and continue a nonconforming sign, the following conditions apply:
* * *
(6) The sign may continue as long as it is not destroyed, abandoned, or discontinued. If permitted by State law and reerected in kind, exception may be made for signs destroyed due to vandalism and other criminal or tortious acts.
In each case, the hearing officer found, as a matter of law, that federal law prohibited the re-erection of appellants' destroyed *993 signs. In Lamar, the hearing officer reasoned as follows:
25. On July 1, 1998, the signs were "destroyed" within the meaning of Rule 14-10.007(1)(d), Florida Administrative Code, effective June 28, 1998. Under Rule 14-10.007(1)(f), Florida Administrative Code, effective June 28, 1998, the nonconforming signs could have been reerected if destroyed by vandalism, or other criminal, or tortious act. The nature of that re-erection could be in kind.
26. Florida, in creating the exception for the re-erection in kind of the nonconforming signs destroyed in relation to vandalism or other criminal or tortious acts has acted consistent with 23 C.F.R. Section 750.707(6), a federal enactment dealing with nonconforming signs, as contemplated by the agreement between the State of Florida and the Federal government concerning the Highway Beautification Act of 1965. The federal law at 23 C.F.R. Section 750.707(6), allows states to permit re-erection in kind for signs destroyed due to vandalism and other criminal and tortious acts.
27. As was its burden, the Department proved the nonconforming nature of the signs in question based upon spacing requirements and their destruction by the wildfire. In turn, Lamar has failed to prove that the nature of the destruction was an act of vandalism or other criminal act or by commission of a tort. The failure of property owners to conduct controlled burning prior to the wildfire and the setting of backfires by the Timber Company and the California fire crew were not acts of vandalism or other forms of crimes and did not constitute torts.
28. Alternatively, Lamar argues that it is entitled to repair and rebuild nonconforming signs in kind based upon the expectations of CS/HB 1535 and in particular Sections 24 which states:
Notwithstanding any other law, regulation, or local ordinance to the contrary, the owners of any nonconforming buildings, houses, businesses, or other appurtenances to real property which were damaged or destroyed during the wildfires that occurred during June and July of 1998, may elect to repair or rebuild such nonconforming structures in like-kind, unless prohibited by Federal law or regulation.
Although the wildfire at issue occurred during June and July 1998 and destroyed the nonconforming structures, even assuming that the signs constituted one of the forms of property subject to repair or rebuilding, in this instance the signs could not be rebuilt because of the prohibition in the Federal law found at 23 C.F.R. Section 750.707(6), limiting the re-erection in kind for destroyed nonconforming signs to those instances where the destruction was due to vandalism or other criminal or tortious acts.
In its final orders, the department rejected appellants' contention that the hearing officers had erroneously interpreted the federal law.
On appeal, appellants argue that the hearing officers' interpretation of the federal law, as applied to House Bill 1535, was erroneous as a matter of law. We disagree. The language of the federal statute is plain. A nonconforming sign may remain until destroyed. If destroyed due to vandalism or other criminal or tortious acts and if state law allows it, the sign may be reerected. In the preamble to the promulgation of the final rule in 1975, the Federal Highway Administration explained that the reason for the limited exception was to thwart acts of "environmental terrorism" or the like where persons opposed to billboards might engage in their intentional destruction. 40 Fed.Reg. *994 42,843 (Sept. 16, 1975).[3] There is no other authority in federal law allowing re-erection of a nonconforming sign. In short, it was correctly decided below that re-erection of the signs was not permitted by state or federal law.
Appellants also challenge the hearing officer's conclusion that the signs were not destroyed by tortious conduct. In detailed findings, the hearing officers found that: the wildfires started after a series of lightning strikes in a remote swampy area in dry weather conditions; appellants' signs were eventually consumed and were therefore destroyed within the meaning of Rule 14-10.007(1)(d), Florida Administrative Code; appellants were denied access to the signs because the roads were closed; the suppression efforts of the Florida Department of Agriculture, the Division of Forestry, and other national, state, and local firefighting organizations were hampered by the remoteness of the swampy area in which the fire originated, the meager amount of available manpower and equipment, and an extremely dry terrain; and although the firefighters resorted to "an appropriate" firefighting technique in which unburned material is intentionally burned before the main fire reaches that area to protect the control line from the main fire, their efforts were unsuccessful because of the dryness of the fuels.
Based upon the foregoing factual findings, the hearing officer in Lamar concluded as a matter of law:
Lamar has failed to prove that the nature of the destruction was an act of vandalism or other criminal act or by commission of a tort. The failure of property owners to conduct controlled burning prior to the wildfire and the setting of backfires by the Timber Company and the California fire crew were not acts of vandalism or other forms of crimes and did not constitute torts.
The DOT approved the hearing officer's factual and legal conclusions:
LAMAR extensively argued in its Proposed Recommended Order that the Division of Forestry breached a statutorily imposed duty to protect LAMAR'S signs. Judge Adams acknowledged LAMAR'S Proposed Recommended Order in his Recommended Order and concluded that LAMAR failed to prove that the signs were destroyed "by an act of vandalism or other criminal act or by commission of a tort." LAMAR'S argument that Conclusion of Law Number 27 does not encompass LAMAR'S theory that the Division of Forestry tortiously failed to protect its signs is without merit. By its argument, LAMAR is asking the DEPARTMENT to reweigh the evidence and conclude both factually and legally that the Division of Forestry had a statutory *995 duty to protect LAMAR'S signs from damage by wildfire. However, the Florida Supreme Court has specifically stated that a governmental entity does not owe individual property owners a common law duty of care to provide fire protection services, and the Florida legislature had declined to impose such a duty by statute. City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla.1985); § 590.02(3), Fla. Stat. LAMAR'S argument in this regard is without support in the record or in the law.
Appellants contend on appeal that the department erred by determining that the Division of Forestry ["DOF"] did not owe them a duty to protect their signs during the wildfires. They contend that this conclusion is contrary to Chapter 590 of the Florida Statutes, which describes the duties and responsibilities of DOF.[4] Appellants also rely on the hearing testimony of Michael Kuypers, a District Manager for the Department of Agriculture Consumer Services, Division of Forestry, who testified that the DOF, in fighting wildfires, has a duty to protect life and property pursuant to Chapter 590 of the Florida Statutes.
Although Chapter 590 describes the sphere of responsibility of DOF as an agency of the state, it sets forth, at most, a general duty to the public, not a specific duty to any person to prevent wildfires or to extinguish them before any property damage or personal injury occurs. Even if such a duty were to exist, appellants failed to present any evidence of negligence.
In City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla.1985), the supreme court held that a governmental entity which provided fire protection services could not be liable in tort to a property owner for damages caused by firefighters' negligent discretionary decisions in the course of combating a fire.
... In accordance with our decisions in Trianon [Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985)] and Everton v. Willard, 468 So.2d 936 (Fla.1985), we conclude that there has never been a common law duty of care *996 to individual property owners to provide fire protection services. Further, we find no statutory duty of care upon which to base governmental liability for such conduct.
In Trianon we stated that "there is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions [of enforcing the laws and protecting the public safety] because there has never been a common law duty of care with respect to these ... police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care." At 921. (Emphasis added).
The decisions of how to properly fight a particular fire, how to rescue victims in a fire, or what and how much equipment to send to a fire, are discretionary judgmental decisions which are inherent in this public safety function of fire protection. A substantial majority of jurisdictions that have addressed the issue of governmental liability for asserted negligent conduct in responding to and fighting fires have reached this same conclusion. To hold a city liable for the negligent decisions of its fire-fighters would require a judge or jury to second guess fire-fighters in making these decisions and would place the judicial branch in a supervisory role over basic executive branch, public protection functions in violation of the separation of powers doctrine.
We distinguish these types of discretionary fire-fighting decisions from negligent conduct resulting in personal injury...
In conclusion, we hold that if there is to be a duty to individual property owners upon which the liability of a governmental entity and its taxpayers is to be based for the discretionary actions of fire-fighters in combating fires, that duty must be established by an enactment of the legislature and not by judicial fiat. (Citations omitted).
Id. at 122-123 (emphasis in original).
In Trianon, the court specifically identified the "authority given fire protection agencies to suppress fires" as a discretionary governmental function. 468 So.2d at 919. The high court further noted that "legislative enactments for the benefit of the general public do not automatically create an independent duty to either individual citizens or a specific class of citizens" and that there are "areas of governmental activity where `orthodox tort liability stops and the act of governing begins,' ..." Id. at 917-918. We hold that, as a matter of law, these signs were not destroyed due to any tortious act of DOF. The appealed orders are affirmed.[5]
AFFIRMED.
THOMPSON, C.J., COBB, HARRIS, SAWAYA, PALMER and ORFINGER, R.B., JJ., concur.
PLEUS, J., dissents, with opinion in which SHARP, W., J., concurs and PETERSON, J., concurs in result only.
PLEUS, J., dissenting.
I must dissent. The initial three judge panel which decided this Chancellor case was unanimous in reversing the Department's final order revoking the sign permits at issue here. See Chancellor v. Department of Transportation, 26 Fla. L. Weekly D 627 (Fla. 5th DCA Mar. 2, 2001).
The rationale for invoking the en banc rule[1] and withdrawing the prior panel's *997 opinion ostensibly was to maintain uniformity in this court's decisions. In what was perceived to be a similar case, another sign company, North Florida Pecan 1 & 2, Inc., appealed the revocation of its permit, and a second three judge panel with three different judges felt the Chancellor case stood in the way of their decision to affirm the Department's revocation of North Florida Pecan's permits. What the majority of the ten judges on this court ignores in voting to en banc and withdraw the initial opinion in Chancellor is that the facts and issues in Chancellor are different from the facts and issues in North Florida Pecan. The only similarities are that both cases involve billboards destroyed by fire and the revocation of permits by the Department.
In the Chancellor case, the administrative law judge specifically found:
The failure of property owners to conduct controlled burning prior to the wildfire and the setting of backfires by the Timber Company and the California fire crew were not acts of vandalism or other forms of crimes and did not constitute torts.
There were no backfires set in North Florida Pecan, and thus, the facts which compel the decision in Chancellor are different. In my opinion, a second three judge panel and a majority of this court are using the en banc rule improperly to overrule a prior panel. This is a misuse of the en banc rule, and not an effort to maintain uniformity.
Article V, section 4(a), Florida Constitution, provides that in the district courts of appeal: "Three judges shall consider each case and the concurrence of two shall be necessary to a decision." Florida Rule of Appellate Procedure 9.331(a) provides: "En banc hearings and rehearings shall not be ordered unless the case is of exceptional importance or unless necessary to maintain uniformity in the court's decisions."
I agree with Judge Cowart, who dissented in State v. Georgoudiou, 560 So.2d 1241 (Fla. 5th DCA 1990), that "exceptional importance" does not mean any case in which the en banc majority disagrees with the reasoning or result of a panel majority. Exceptional importance means a case exceptionally important to the jurisprudence of Florida as a judicial precedent. To paraphrase Judge Cowart, "The majority opinion is a subversion of the Constitution."
Further, there is no need to maintain uniformity because the facts in Chancellor compel the decision and can easily be distinguished from the facts in North Florida Pecan.
I also take issue with the majority opinion's recitation of the facts in Chancellor. The new opinion makes the black and white assertion, "These signs were nonconforming...." Whether they were conforming or nonconforming was a hotly contested issue. The state had the burden of proof. The state failed to prove nonconformity. In the initial Chancellor opinion, we did not dwell at length on this issue because of our reversal on other grounds. The discussion about conformity was merely dicta. However, the testimony on the issue of nonconformity, as we noted, would not hold up under the scrutiny required by the clear and convincing burden of proof. It would not hold up, as well, under a rule which requires competent substantial evidence. The proof was not there, regardless of which burden of proof is applied. Thus, this case could have been reversed on that issue alone because the Department failed to meet its burden of proof. Nonconformity was not an issue in Florida Pecan.
I continue to hold the view that the proper standard of proof in cases involving the revocation of a sign permit is clear and *998 convincing evidence and not competent substantial evidence. Had this been the holding in Chancellor and the Florida Pecan panel disagreed, an argument could be made for a need to provide uniformity. Such is not the case. The majority opinion relegates this important point to a footnote and claims that the burden of proof and lack of proof were not preserved and are without merit. I disagree.
The legislature's intent in House Bill 1535 is crystal clear. The owners of nonconforming appurtenances to real property (billboards[2]) damaged during the wildfires of 1998 may elect to repair in like kind unless prohibited by federal law or regulation.
The only federal regulation cited is 23 C.F.R., section 750.707(d)(6), which has two sentences and says:
(6) The sign may continue as long as it is not destroyed, abandoned, or discontinued. If permitted by State law and re-erected in kind, exception may be made for signs destroyed due to vandalism or other criminal or tortious acts.
The first sentence refers to an action by the owner of the sign because only an owner can "abandon" or "discontinue." The third word used, "destroyed," fits within the doctrine of noscitur a sociis (a word is known by the company it keeps). In this joinder of the three words, the word "destroyed" must be read together with "abandoned" or "discontinued," which are both acts which only the owner of the sign can undertake. In Chancellor, the owners did not destroy their signs, although the ALJ implies that with his reference to "the failure of the owners to conduct controlled burning prior to the fires." Thus, the signs may continue because they were not destroyed, abandoned or discontinued by the owner.
The federal regulation goes on to provide in the second sentence that state law can provide additional exceptions for vandalism or other criminal or tortious acts. Those exceptions are for acts the owner would not, or did not, commit. One of those exceptions, a tortious act, applies in Chancellor because of the back fires started by the firefighters and the total failure of the DOF to take any action to protect the signs.
House Bill 1535 makes no exceptions for vandalism or other criminal or tortious acts. All the bill does is provide that owners of billboards destroyed by the 1998 wildfires may elect to repair or rebuild their signs.
The majority opinion fails to note that section 750.707 is the only federal regulation which remotely addresses the issue of billboards destroyed by wildfires. What 23 C.F.R., section 750.707 does not expressly state, and therefore does not prohibit, is re-erection of nonconforming signs damaged as a result of either wildfires or the firefighters' tortious misfeasance.
To prohibit means to forbid by law. The majority opinion assumes that, because 23 C.F.R. section 750.707(d)(6) references three exceptions which allow nonconforming signs to be re-erected after they are destroyed, that only those three exceptions are authorized, and that any other exception is specifically prohibited. However, 23 C.F.R. § 750.707(d)(6) does not specifically prohibit the re-erection of a nonconforming sign damaged or destroyed as a result of a wildfire, nor does it specifically prohibit a state from making additional exceptions as to when destroyed nonconforming signs may be re-erected. In fact, the regulation, read in its entirety, expressly allows nonconforming signs that are destroyed to be re-erected, expressly *999 allows states to make exceptions which allow re-erection, and expressly mandates that states define what constitutes destruction. What 23 C.F.R. § 750.707 does not expressly state, and therefore does not prohibit, is re-erection of nonconforming signs damaged as a result of wildfires.
Reading 23 C.F.R. 750 and House Bill 1535 (1998) together leads to the inescapable conclusion that the intent of the Florida legislature was to allow nonconforming[3] signs to be re-erected. No federal law or regulation prohibits re-erection of nonconforming signs.
Even if one concludes that the second sentence of section 750.707 controls, the facts of this case, which differ from the North Florida Pecan case, demonstrate tortious conduct. The second panel's recitation of the facts is misleading because it does not tell the whole story. Reading the majority opinion could lead one to the conclusion that a lightning strike started a wildfire which ultimately destroyed the signs. The fact that a lightning strike started a wildfire, although true to a point, does not paint the entire picture. The actual fire which destroyed the signs in Chancellor was no act of God. The fire was a deliberately started backfire. Tortious conduct occurred when the California fire fighting team, after starting the backfires, failed in its duty to protect the signs. The sign owners were barred from saving the signs because the Department of Forestry barred entry to the sign companies and closed I 95. The administrative law judge even went so far as to put the blame partially on the sign owners with his finding that the property owners failed to conduct controlled burning prior to the wildfires. The California firefighters, as agents of the Department of Forestry, had a duty to protect property. They did nothing to protect the appellants' signs. Whether anything they did would have been successful is not the issue. The fact is, they did nothing. The issue of misfeasance can constitute tortious conduct and the majority opinion has refused to recognize that point. Its conclusion that DOF does not have a duty to protect property is simply wrong. As we noted in the initial unanimous decision, the civil liability of DOF for damages is not the issue. The issue is whether there was a duty (there was); was the duty breached by not taking appropriate steps to protect the property (it was); and was there damage (there was).
The majority tries to skirt the argument of a breached duty with the conclusion that although Chapter 590 describes the sphere of responsibility of DOF, it sets forth, at most, a "general duty to the public," not a "specific duty" to any person to "prevent wildfires or to extinguish them before they destroy property." This statement misses the point. Their duty certainly is not to prevent wildfires. That would be absurd. Their duty certainly is not to extinguish the wildfire before it destroys signs. That, too, is absurd. Absurd, as well, is the suggestion that the sign owners had some obligation to conduct a controlled burn to prevent wildfire destruction. The duty of the Department of Forestry is to take appropriate steps to prevent damage to private property. That duty was breached. The backfires were lit and the firefighters did nothing to protect the signs. This is misfeasance, and while City of Daytona Beach v. Palmer, 469 So.2d 121 (Fla. 1985) gives them immunity from suit, it does not convert tortious conduct to fulfillment of a general duty.
It would be viewed as outrageous for a fire department to stand outside a burning *1000 house and tell the homeowner, "We will do nothing to stop the fire from burning down your house because we have no specific duty to you. We only have a general duty to protect the public. We only step in when the public is threatened." The Department's erroneous legal conclusion that the DOF had no duty to protect the signs is fatal to its legal conclusion of no tortious conduct.
I am well aware of the attitude, on the part of some, to look with disfavor on billboards. In the absence of legislative mandate, such attitudes, constitutionally, or in terms of justice and fairness, should not be the basis to destroy valuable property rights. I refuse to believe it fair or just for those who dislike highway signs to ignore the private property rights of the sign owners. In these cases the Department of Transportation has done just that.
SHARP, W., J., concurs.
PETERSON, J., concurs in result only.
NOTES
[1] "Nonconforming sign" means a sign which was lawfully erected but which does not comply with the land use, setback, size, spacing and lighting provisions of state or local law, rule, regulation or ordinance passed at a later date or a sign which was lawfully erected but which later fails to comply with state or local law, rule, regulation or ordinance due to changed conditions. § 479.01(14), Fla. Stat. (1997); accord 23 C.F.R. s. 750.303.
[2] In connection with these claims, appellants also contend that the burden of proof required to revoke a sign permit is "clear and convincing evidence."
[3] The preamble states:

Comments were made with regard to § 750.707(d)(6) that the exceptions allowed should also include acts of God as they too constitute events beyond the sign owner's control. No change has been made. The exceptions made for vandalism and other criminal or tortious acts were due solely to the fact that the Highway Beautification Act of 1965, Pub.L. 89-295, October 22, 1965, created an impetus for unauthorized persons to deliberately chop down or vandalize signs as part of the environmental movement. Such a practice is not condoned. However, nonconforming uses are terminated by natural attrition in the normal course of events. Thus, a nonconforming sign destroyed or substantially damaged by an act of God is terminated because it would need to be rebuilt or a new sign would have to be erected in its place. New signs, or substantially new signs, must be located in conforming areas. To allow new signs to be erected in a nonconforming area only to be later acquired by the State would unduly burden the taxpayers with an unwarranted cost.
[4] 590.01 Wildfire protection.The division has the primary responsibility for prevention, detection, and suppression of wildfires wherever they may occur. The division shall provide leadership and direction in the evaluation, coordination, allocation of resources, and monitoring of wildfire management and protection. The division shall promote natural resource management and fuel reduction through the use of prescribed fire and other fuel reduction measures.

* * *
590.015 Definitions.As used in this chapter, the term:
(1) "Division" means the Division of Forestry of the Department of Agriculture and Consumer Services.
* * *
(4) "Wildfire" means any vegetative fire that threatens to destroy life, property, or natural resources.
* * *
590.02 Division powers, authority, and duties; liability; building structures; Florida Center for Wildfire and Forest Resources Management Training.
(1) The division has the following powers, authority, and duties:
(a) To enforce the provisions of this chapter;
(b) To prevent, detect, suppress, and extinguish wildfires wherever they may occur on public or private land in this state and to do all things necessary in the exercise of such powers, authority, and duties;
* * *
[590.125(3)(a)]1. Prescribed burning reduces vegetative fuels within wild land areas. Reduction of the fuel load reduces the risk and severity of wildfire, thereby reducing the threat of loss of life, and property, particularly in urban areas.
[5] We do not discuss appellant's points I and IV, the burden of proof and lack of proof of the signs' non-conforming status, as these were not preserved and, in any event, are without merit.
[1] Florida Rule of Appellate Procedure 9.331.
[2] No one who understands real property law would argue that a leasehold interest together with a revenue-generating billboard is not an appurtenance to real property.
[3] There was no admissible evidence in Chancellor that the signs were actually nonconforming.