796 So.2d 547 (2001)
CHANCELLOR MEDIA WHITECO OUTDOOR CORPORATION, Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 1D99-4725.
District Court of Appeal of Florida, First District.
July 24, 2001.
Opinion on Motion for Clarification October 9, 2001.
Gerald S. Livingston and Aileen M. Reilly of Livingston & Reilly, P.A., Orlando, for Appellant.
Pamela S. Leslie, Marianne A. Trussell and Vance W. Kidder of Florida Department of Transportation, Tallahassee, for Appellee.
ALLEN, C.J.
Chancellor Media Whiteco Outdoor Corporation (the appellant) challenges a final order of the Florida Department of Transportation (the appellee) by which the appellant was ordered to remove six of its outdoor advertising signs located adjacent to U.S. Highway 1 and Interstate 95 in Brevard County, Florida. We affirm the final order, but we certify conflict between our decision and a decision of the Fifth District Court of Appeal.
This case involves the Highway Beautification Act of 1965 and Florida's response to this federal legislation. The general purpose of the Highway Beautification Act is to establish a control system for outdoor advertising on the federal interstate and *548 primary highway system. 23 U.S.C. § 131. The states are given the primary task of providing for effective control over outdoor advertising, subject to oversight by the secretary of the United States Department of Transportation. If a state does not make provision for effective control of outdoor advertising, a ten percent reduction in the federal-aid funds for the state's highways may be imposed until such time as the state makes such provision. 23 U.S.C. § 131(b).
In order to secure its full share of federal highway funds, Florida has entered into an agreement (the federal-state agreement) with the United States Department of Transportation relating to the size, lighting, and spacing of signs in accordance with the requirements of the federal act and federal regulations. Pursuant to section 479.02(1), Florida Statutes, administration and enforcement of the agreement have been delegated to the appellee, and the appellee has adopted rules consistent with this responsibility. See Fla. Admin. Code Ch. 14-10.
Signs which do not conform to size, lighting, and spacing requirements are generally prohibited and must be removed. 23 U.S.C. § 131(r). However, in accordance with a federal regulation, a state administrative rule, and the grandfather clause of the federal-state agreement, an exception has been carved out for nonconforming signs which preexisted the federal-state agreement. So long as a grandfathered sign remains in substantially the same condition as it existed when it became nonconforming, the prohibition will not apply. 23 C.F.R. § 750.707(c) & (d)(5). And the federal regulation further provides in relevant part as follows:
The [grandfathered] sign may continue as long as it is not destroyed.... If permitted by State law and reerected in kind, exception may be made for signs destroyed due to vandalism and other criminal or tortious acts.
23 C.F.R. § 750.707(d)(6). In accordance with the authority granted by the federal regulation, the appellee has enacted a rule authorizing reerection in kind of a grandfathered sign destroyed by vandalism or other criminal or tortious act. Fla. Admin. Code R. 14-10.007(f).
The appellant owned six grandfathered signs which it lawfully maintained in accordance with the federal regulation, the state administrative rule, and the grandfather clause of the federal-state agreement. When the signs were destroyed by wildfire in the summer of 1998, the appellant erected the new signs at issue in this case. They are substantially identical to the destroyed signs in size, construction, and location. Following erection of the new signs, the appellee issued notices of violation alleging that the new signs were nonconforming and had to be removed. The appellant responded by petitioning for administrative proceedings.
Following a formal administrative hearing, the administrative law judge entered a recommended order. Finding that the wildfire that destroyed the grandfathered signs had been caused by lightning rather than a criminal or tortious act, the administrative law judge recommended that the appellant be required to remove the new signs. In its final order, the appellee adopted the recommended order in its entirety and ordered the appellant to remove the signs.
In one of its arguments on appeal the appellant asserts that it was entitled to erect and maintain the new signs by virtue of a state law enacted following the 1998 wildfires. The 1999 law provides:
Notwithstanding any other law, regulation, or local ordinance to the contrary, the owners of any nonconforming buildings, houses, businesses, or other appurtenances *549 to real property which were damaged or destroyed during the wildfires that occurred during June and July of 1998, may elect to repair or rebuild such nonconforming structures in like-kind, unless prohibited by Federal law or regulation.
Ch. 99-292, § 24, Laws of Fla.
The administrative law judge and the appellee concluded that this legislative enactment (section 24) provided no authority for the erection of the new signs because such was prohibited by 23 C.F.R. § 750.707. But the appellant disagrees and argues that erection of the new signs is not "prohibited" by the federal regulation because the regulation does not expressly forbid the erection of a like-kind sign to replace a grandfathered sign which has been destroyed by wildfire.
Although the federal regulation does not expressly prohibit the erection of a like-kind sign to replace a grandfathered sign which has been destroyed by wildfire, such would constitute a violation of the federal regulation and the Highway Beautification Act. The federal regulation prescribes the contours of the narrow grandfather exception to the 23 U.S.C. § 131 requirement that a state must remove nonconforming signs from federal highways in order to qualify for its full share of federal highway dollars. Subsection (c) of the regulation provides that a grandfather clause only allows an individual grandfathered sign at its particular location for the duration of its normal life subject to customary maintenance. Subsection (d) then provides that a grandfathered sign may continue as long as it is not destroyed. But it further provides that, if permitted by state law and reerected in kind, exception may be made for grandfathered signs destroyed due to vandalism and other criminal or tortious acts. 23 C.F.R. § 750.707(c) & (d). Grandfathered signs therefore lose their exemption once they are destroyed by noncriminal, nontortious acts, and a state would violate the federal regulation and the Highway Beautification Act by permitting a nonconforming replacement sign.
The appellant contends that the regulation's reference to criminal or tortious acts does not necessarily provide an exhaustive recitation of the circumstances under which a state might authorize erection of a new nonconforming sign. We reject this contention because the criminal and tortious acts exception is recited in the regulation immediately following recitation of the general proposition that a grandfathered sign may continue "as long as it is not destroyed." Because an open-ended exception to this general proposition would render the general proposition meaningless, such was obviously never intended.
The appellant also argues that the appellee's construction of section 24 "is inconsistent with other states that have allowed their sign regulations to vary from the federal regulations, despite allegations that federal funds would be lost." Although the section 24 phrase "unless prohibited by Federal law or regulation" might be read as applying only where there is an explicitly-stated federal prohibition against erection of a new like-kind sign to replace a grandfathered sign destroyed by wildfire, it is unlikely that the legislature intended so narrow an application of this language. Florida has exerted considerable effort over the last 30 years in complying with the Highway Beautification Act in order to protect its full share of federal highway funds. The federal-state agreement has been executed, legislation required for compliance has been enacted, and comprehensive state administrative rules have been enacted. The legislature surely did not intend to cast aside these years of effort and imperil the state's *550 share of future federal highway funds simply to allow erection of some nonconforming highway billboards. We instead conclude, as respecting highway signs, that the legislative intent was to authorize erection of new like-kind signs to replace grandfathered signs only if erection of the signs would not be contrary to the Highway Beautification Act and the federal regulations. Because the appellant's nonconforming signs do not satisfy this condition, they are not authorized.
Our decision in this case conflicts with the decision in Chancellor Media Whiteco Outdoor v. Department of Transportation, (Fla. 5th DCA 2001). We therefore certify conflict between these decisions.
The order under review is affirmed.
PADOVANO, J., CONCURS; BENTON, J., DISSENTS WITH WRITTEN OPINION.
BENTON, J., dissenting.
I respectfully dissent. The majority opinion fails to give effect to plain language in a state law (Section 24) enacted in the wake of the 1998 wildfires to facilitate replacing structures lost in the conflagration.[1] Section 24 reads:
Notwithstanding any other law, regulation, or local ordinance to the contrary, the owners of any nonconforming buildings, houses, businesses, or other appurtenances to real property which were damaged or destroyed during the wildfires that occurred during June and July of 1998, may elect to repair or rebuild such nonconforming structures in like-kind, unless prohibited by Federal law or regulation.
Ch. 99-292, § 24, at 3236, Laws of Fla. By authorizing repair or reconstruction of "businesses, or other appurtenances to real property," section 24 removed any state-law impediment to restoring or replacing these outdoor advertising signs.[2]
"A court's function is to interpret statutes as they are written and give effect to each word in the statute." Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001). "`Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language *551 which is free from ambiguity.'" Id. (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla. 1992) (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 694-95 (1918))).
Chancellor Media Whiteco Outdoor Corporation (Chancellor) violated no federal law or regulation when it repaired or rebuilt "in like-kind" six billboards it lost to wildfire, even though, according to DOT's records, the signs Chancellor repaired or rebuilt were (under state law) nonconforming[3] when wildfire damaged or destroyed them in June or July of 1998. See §§ 479.11(1) & 479.111(2), Fla. Stat. (1997). Neither the Highway Beautification Act of 1965, Pub.L. No. 89-285, 79 Stat. 1028 (codified as amended in scattered sections of 23 U.S.C., including 23 U.S.C. § 131), regulations promulgated thereunder, nor any other federal law or regulation prohibited Chancellor's repairing or rebuilding its charred signs.
Intergovernmental arrangements predicated on Congress' spending power, including those to which the Highway Beautification Act of 1965 have given rise, contemplate discrete roles for state and federal law. See, e.g., Wheeler v. Barrera, 417 U.S. 402, 417-19, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974) ("The key issue, namely, whether federal aid is money `donated to any state fund for public school purposes,' within the meaning of the Missouri Constitution, Art. 9, § 5, is purely a question of state and not federal law. By characterizing the problem as one involving `federal' and not `state' funds, and then concluding that federal law governs, the Court of Appeals, we feel, in effect nullified the Act's policy of accommodating state law."); see generally Albert J. Rosenthal, Conditional Federal Spending and the Constitution, 39 Stan. L.Rev. 1103, 1105-06, 1133-38 (1987); William J. Klein, Note, Pressure or Compulsion? Federal Highway Fund Sanctions of the Clean Air Act Amendments of 1990, 26 Rutgers L.J. 855, 862-63 (1995); Donald J. Mizerk, Note, The Coercion Test and Conditional Federal Grants to the States, 40 Vand. L.Rev. 1159, 1160-67 (1987); Leonard Weiser Varon, Note, Injunctive Relief from State Violations of Federal Funding Conditions, 82 Colum. L.Rev. 1236, 1238-39 (1982); Note, Federalism, Political Accountability, and the Spending Clause, 107 Harv. L.Rev. 1419, 1427-32 (1994); Note, Making the Old Federalism Work: Section 1983 and the Rights of Grant in Aid Beneficiaries, 92 Yale L.J. 1001, 1002 (1983).
[U]nder Congress' spending power, "Congress may attach conditions on the receipt of federal funds." South Dakota v. Dole, 483 U.S., at 206, 107 S.Ct., at 2795. Such conditions must (among other requirements) bear some relationship to the purpose of the federal spending, id., at 207-208, and n. 3, 107 S.Ct., at 2796, and n. 3; otherwise, of course, the spending power could render academic the Constitution's other grants and limits of federal authority. Where the recipient of federal funds is a State, as is not unusual today, the conditions attached *552 to the funds by Congress may influence a State's legislative choices. See Kaden, Politics, Money, and State Sovereignty: The Judicial Role, 79 Colum.L.Rev. 847, 874-881 (1979). Dole was one such case: The Court found no constitutional flaw in a federal statute directing the Secretary of Transportation to withhold federal highway funds from States failing to adopt Congress' choice of a minimum drinking age. Similar examples abound. See, e.g., Fullilove v. Klutznick, 448 U.S. 448, 478-480, 100 S.Ct. 2758, 2775, 65 L.Ed.2d 902 (1980); Massachusetts v. United States, 435 U.S. 444, 461-462, 98 S.Ct. 1153, 1164, 55 L.Ed.2d 403 (1978); Lau v. Nichols, 414 U.S. 563, 568-569, 94 S.Ct. 786, 789, 39 L.Ed.2d 1 (1974); Oklahoma v. United States Civil Service Comm'n, 330 U.S. 127, 142-144, 67 S.Ct. 544, 553-554, 91 L.Ed. 794 (1947).
Second, where Congress has the authority to regulate private activity under the Commerce Clause, we have recognized Congress' power to offer States the choice of regulating that activity according to federal standards or having state law pre-empted by federal regulation. Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., supra, 452 U.S.[ 264], at 288, 101 S.Ct.[ 2352], at 2366[, 69 L.Ed.2d 1 (1981)]. See also FERC v. Mississippi, supra, 456 U.S.[ 742], at 764-765, 102 S.Ct.[ 2126], at 2140[, 72 L.Ed.2d 532 (1982)]. This arrangement, which has been termed "a program of cooperative federalism," Hodel, supra, 452 U.S., at 289, 101 S.Ct., at 2366, is replicated in numerous federal statutory schemes. These include the Clean Water Act, 86 Stat. 816, as amended, 33 U.S.C. § 1251 et seq., see Arkansas v. Oklahoma, 503 U.S. 91, 101, 112 S.Ct. 1046, 1054, 117 L.Ed.2d 239 (1992) (Clean Water Act "anticipates a partnership between the States and the Federal Government, animated by a shared objective"); the Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29 U.S.C. § 651 et seq., see Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 97, 112 S.Ct. 2374, 2382, 120 L.Ed.2d 73 (1992); the Resource Conservation and Recovery Act of 1976, 90 Stat. 2796, as amended, 42 U.S.C. § 6901 et seq., see Department of Energy v. Ohio, 503 U.S. 607, 611-612, 112 S.Ct. 1627, 1631-1632, 118 L.Ed.2d 255 (1992); and the Alaska National Interest Lands Conservation Act, 94 Stat. 2374, 16 U.S.C. § 3101 et seq., see Kenaitze Indian Tribe v. Alaska, 860 F.2d 312, 314 (CA9 1988), cert. denied, 491 U.S. 905, 109 S.Ct. 3187, 105 L.Ed.2d 695 (1989).
By either of these methods, as by any other permissible method of encouraging a State to conform to federal policy choices, the residents of the State retain the ultimate decision as to whether or not the State will comply. If a State's citizens view federal policy as sufficiently contrary to local interests, they may elect to decline a federal grant. If state residents would prefer their government to devote its attention and resources to problems other than those deemed important by Congress, they may choose to have the Federal Government rather than the State bear the expense of a federally mandated regulatory program, and they may continue to supplement that program to the extent state law is not pre-empted. Where Congress encourages state regulation rather than compelling it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people.
By contrast, where the Federal Government compels States to regulate, the accountability of both state and federal *553 officials is diminished.... [W]here the Federal Government directs the States to regulate, it may be state officials who will bear the brunt of public disapproval, while the federal officials who devised the regulatory program may remain insulated from the electoral ramifications of their decision. Accountability is thus diminished....
New York v. United States, 505 U.S. 144, 167-69, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Congress cannot "commandeer[] the state legislative process by requiring a state legislature to enact a particular kind of law." Reno v. Condon, 528 U.S. 141, 149, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). See Printz v. United States, 521 U.S. 898, 933, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)(holding that, "as we concluded categorically in New York: `The Federal Government may not compel the States to enact or administer a federal regulatory program.'"). Congress did not and could not compel the Florida Legislature to enact a law forbidding Chancellor to replace its immolated signs. "[R]esponsive to the local electorate's preferences," New York, 505 U.S. at 168, 112 S.Ct. 2408, the Legislature enacted Section 24 to mitigate losses the 1998 wildfires caused, including Chancellor's. Speaking through their elected legislators, "the residents of [Florida] retain the ultimate decision as to whether or not the State will comply," New York, 505 U.S. at 168, 112 S.Ct. 2408, with conditions the Highway Beautification Act of 1965 (as adumbrated by regulations the federal Department of Transportation promulgates) imposes on disbursement of federal highway funds.
Many of those conditions are spelled out in federal regulations, 23 C.F.R. §§ 750.705 et seq., which specify how states are to control outdoor advertising along interstate and federal-aid highways, in order to be considered in "effective control" of outdoor advertising.[4] But neither *554 the Highway Beautification Act of 1965 nor the federal regulations that implement the Act amount to an exercise of "authority directly over individuals rather than over States." New York, 505 U.S. at 165, 120 L.Ed.2d 120. Incidentally-and not by chance-while 23 U.S.C. § 131(r) (1990 & Supp.2000) calls for states to remove illegal signs in order to remain in "effective control," the implementing regulation, 23 C.F.R. § 750.703(e), defines as "illegal" a sign "which was erected or maintained in violation of State law or local law or ordinance." (Emphasis supplied.) Section 24 unequivocally renders inapplicable any state law or local ordinance that Chancellor might otherwise have offended in repairing or rebuilding these signs, and no federal prohibition has ever existed.
Without reaching Chancellor's other arguments on appeal, I would reverse the order under review.

ON MOTION FOR CLARIFICATION
ALLEN, C.J.
In our opinion in this case we certified conflict between our decision and the decision in Chancellor Media Whiteco Outdoor v. Department of Transportation, (Fla. 5th DCA 2001). Because the Fifth District opinion has since been withdrawn and that court has now issued an en banc decision consistent with our decision herein, see Chancellor Media Whiteco Outdoor v. Department of Transportation, 795 So.2d 991 (Fla. 5th DCA 2001), we withdraw our certification of conflict.
PADOVANO, J. CONCURS; BENTON, J., CONCURS WITH WRITTEN OPINION.
BENTON, J., concurring.
While today's decision does not conflict with Chancellor Media Whiteco Outdoor v. Department of Transportation, 795 So.2d 991 (Fla. 5th DCA 2001), it does conflict with Florida Department of Revenue v. Florida Municipal Power Agency, 789 So.2d 320, 323 (Fla.2001) ("If the language of the statute is clear and unambiguous, courts enforce the law according to its terms...."); State v. Bradford, 787 So.2d 811, 817 (Fla.2001); Wolf v. County of *555 Volusia, 703 So.2d 1033, 1034 (Fla.1997), and other cases to like effect.
NOTES
[1] Enacted as section 24 of chapter 99-292, Laws of Florida, this provision has never been codified. See generally § 11.2422, Fla. Stat. (1999) ("Every statute of a general and permanent nature enacted by the State or by the Territory of Florida at or prior to the regular 1997 legislative session, and every part of such statute, not included in Florida Statutes 1999, as adopted by s. 11.2421, as amended, or recognized and continued in force by reference therein or in ss. 11.2423 and 11.2424, as amended, is repealed."). But see Fla. HB 657 (2001) ("Relating to Official Florida Statutes Adoption"), which died in the Senate in returning messages at the close of the 2001 legislative session.
[2] The outdoor advertising signs at issue may be viewed either as businesses or as "other appurtenances to real property" within the meaning of the statute. The fact that Chancellor's outdoor advertising signs were subject to removal, upon termination of the lease of the real property on which they were erected, is not determinative. The terms of the lease are significant in other legal contexts, to be sure. See Greenwald v. Graham, 100 Fla. 818, 130 So. 608, 610 (1930); Commercial Fin. Co. v. Brooksville Hotel Co., 98 Fla. 410, 123 So. 814, 816 (1929); Sears, Roebuck & Co. v. Bay Bank & Trust Co., 537 So.2d 1041, 1042 n. 3 (Fla. 1st DCA 1989); Cmty. Bank v. Barnett Bank, 518 So.2d 928, 930 (Fla. 3d DCA 1987); Strickland's Mayport, Inc. v. Kingsley Bank, 449 So.2d 928, 928-29 (Fla. 1st DCA 1984); Wetjen v. Williamson, 196 So.2d 461, 463-64 (Fla. 1st DCA 1967). But the outdoor advertising signs were substantial structures that were not portable in any ordinary sense and fall within the reach of the statute.
[3] The recommended order concluded that the signs were nonconforming both because they were not on property zoned or otherwise designated for commercial or industrial use, see § 479.111(2), Fla. Stat. (1997), and because they did not meet statutory spacing requirements. See § 479.07(9)(a), Fla. Stat. (1997). Located within 660 feet of Interstate 95 (an interstate highway) or U.S. Highway 1 (a federal primary highway), the signs in question are "visible from ... the main-traveled way." § 479.07(1), Fla. Stat. (1997). DOT had not ordered the old signs' removal, however, because they fell within grandfather provisions allowing signs that were legal when erected to remain. See § 479.07(9)(c), Fla. Stat. (1997); Fla. Admin. Code R. 14-10.007.
[4] Failure to be in "effective control" can result in a state's losing up to ten percent of its portion of federal highway funds. See 23 U.S.C. § 131(b) & (c) (1990). See generally State v. Brinegar, 379 F.Supp. 606 (D.Ver.1974) (approving the Secretary of Transportation's decision to withhold ten percent of Vermont's federal highway funds because Vermont had not made provision for just compensation as required by 23 U.S.C. § 131(g)). See also Craig J. Albert, Your Ad Goes Here: How the Highway Beautification Act of 1965 Thwarts Highway Beautification, 48 U. Kan. L.Rev. 463, 494-98 (2000).

The Fifth District reads Section 24 as fully consonant, in any event, with the federal regulations defining "effective control of outdoor advertising":
23 C.F.R. section 750.707(d)(6) does not specifically prohibit the reerection of a nonconforming sign damaged or destroyed as a result of a wildfire, nor does it specifically prohibit a state from making additional exceptions as to when destroyed nonconforming signs may be reerected. In fact, 23 C.F.R. section 750.707, read in its entirety, expressly allows nonconforming signs that are destroyed to be reerected, expressly allows states to make exceptions to allow destroyed nonconforming signs to be reerected, and expressly mandates that states define what constitutes destruction. What 23 C.F.R. section 750.707 does not expressly state, and therefore does not prohibit, is reerection of nonconforming signs damaged as a result of wildfires.
Chancellor Media Whiteco Outdoor v. Dep't of Transp., 26 Fla. L. Weekly D627, D628-D629 (Fla. 5th DCA Mar.2, 2001). Today's majority opinion does not refute this analysis, which is properly viewed, moreover, in the context of what has been called "the clear statement rule of Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)." Alexander v. Sandoval, 532 U.S. 275, ___, 121 S.Ct. 1511, 1523, 149 L.Ed.2d 517 (2001).
The legitimacy of Congress' power to legislate under the spending power ... rests on whether the State voluntarily and knowingly accepts the terms of the "contract." See Steward Machine Co. v. Davis, 301 U.S. 548, 585-598, 57 S.Ct. 883, 890-896, 81 L.Ed. 1279 (1937); Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.
Pennhurst State Sch. and Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). See Davis ex. rel. LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 640, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). See also Code Del. Regs. § 85-200-1.15(D)(1)(a) (allowing "[n]on-conforming signs ... [to] be maintained or rebuilt when destroyed by ... acts of God"); Ohio Admin. Code § 5501:2-2-06(D)(1) (allowing replacement of signs destroyed by "weather-related causes").
There is, to be sure, another view on Section 24's compatibility with the "effective control of outdoor advertising." See Letter from James E. St. John, Division Administrator, U.S. Dep't of Transp. to Thomas F. Barry, Jr., Fla. Dep't of Transp. at 2 (July 23, 1999) (available at Fla. Dep't of Transp., Tallahassee, Fla.) ("Section 24 ... will prevent the Florida Department of Transportation from maintaining effective control. This may subject the State to the threat of a sanction of up to 10% of its appointed Federal funds."). But, even if Mr. Barry's "threat of a sanction" materializes, the Florida Legislature had full authority to "and did, adopt `the "simple expedient" of not yielding to what [some might view as] federal coercion.'" South Dakota v. Dole, 483 U.S. 203, 210, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (quoting Oklahoma v. Civil Service Comm'n, 330 U.S. 127, 143-44, 67 S.Ct. 544, 91 L.Ed. 794 (1947)). See also Steward Mach. Co. v. Davis, 301 U.S. 548, 595, 57 S.Ct. 883, 81 L.Ed. 1279 (1937) ("There is only a condition which the state is free at pleasure to disregard or to fulfill"); Massachusetts v. Mellon, 262 U.S. 447, 482, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).